**INDIUM CORPORATION OF AMERICA, Plaintiff,**

**v.**

**SEMI–ALLOYS, INC., Defendant.**

No. 82–CV–482.

United States District Court, N.D. New York.

July 1, 1983.

Parkhurst & Oliff, Alexandria, Va., Thomas J. Wall, Syracuse, N.Y., Groben, Liddy, Cardamone & Gilroy, Utica, N.Y., for plaintiff; Roger W. Parkhurst, James A. Oliff, Alexandria, Va., Michael H. Stephens, Thomas A. Campany, Utica, N.Y., of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, Gottlieb, Rackman & Reisman, P.C., New York City, Mead, Begley & Quinlan, Schenectady, N.Y., for defendant; Jay Greenfield, William P. Farley, Michael I. Rackman, New York City, William Quinlan, Schenectady, N.Y., of counsel.

## MEMORANDUM–DECISION & ORDER

McCURN, District Judge.

Plaintiff Indium Corporation of America ("Indium") is seeking a declaratory judgment of the invalidity, unenforceability, and non-infringement of three patents held by defendant Semi-Alloys, Inc. ("Semi-Alloys"); treble damages for alleged antitrust violations by Semi-Alloys; and damages based on a pendant state law claim of unfair competition. Presently before the court is defendant's motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Rules 12(b)(1), (6), Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion is granted and the complaint is dismissed, with leave to amend the antitrust claim within 30 days.

Indium and Semi-Alloys are both New York corporations engaged in the manufacture and sale of, *inter alia,* solder preforms or frames, used in the packaging of individual electronic components. Indium alleges that it has recently expanded its existing manufacturing facilities for preforms by purchasing additional plant and equipment. It asserts an intent to use these facilities for the manufacture of pre-assembled solder preforms and lids.

The complaint states that Semi-Alloys is the record owner of three patents, which cover an "Hermetic Sealing Cover for a

Container for a Semiconductor Device" (U.S. Patent 3,874,549), and a method for fabricating such cover (U.S. Patent 3,946,190) and such container (U.S. Patent 3,823,468). The primary challenge to the validity and enforceability of these patents is Indium's allegation that Norman Hascoe (the president of Semi-Alloys and the patent applicant) and Semi-Alloys concealed from the Patent Office their knowledge that Semi-Alloys had sold over 100,000 of the devices more than one year prior to filing the patent application. Such sales would negate patentability under 35 U.S.C. § 102, which provides that:

A person shall be entitled to a patent unless ... (b) the invention was ... in public use or on sale in the country, more than one year prior to the date of the application for patent in the United States.

Indium further contends that the inventions were obvious and therefore unpatentable in light of the prior art, 35 U.S.C. § 103, and that the Patent Office was never informed of such prior art by Hascoe or Semi-Alloys.

The antitrust claims, discussed in greater detail below, are based on the theory that Semi-Alloys' enforcement of its patents, with knowledge that the patents were wrongfully obtained, constituted an unlawful restraint of trade and injured Indium in an amount of $12 million.

*Declaratory Judgment Jurisdiction*

Semi-Alloys has moved to dismiss the patent claims under Rule 12(b)(1), contending that there is no actual controversy between the parties and therefore no jurisdictional basis for a declaratory judgment action.

■ The parties basically agree on the legal criteria used to determine whether there is jurisdiction over a declaratory judgment action against a patentee. The plaintiff must show "a well-grounded fear that should he continue or commence the activity in question, he or one or more of his customers face an infringement suit." *Williams Gold Refining Co., Inc. v. Semi-Alloys, Inc.,* 434 F.Supp. 453, 456 (W.D.N.Y.1977), or, stated differently, "a reasonable apprehension of an infringement suit or threat of one to itself and its customers if plaintiff continues the activity in question." *Nippon Elec. Glass Co., Ltd. v. Sheldon,* 489 F.Supp. 119, 122 (S.D.N.Y.1980). However, the source of that fear or apprehension must be in the patentee's statements or conduct. *Premo Pharm. Labs. v. Pfizer Pharm., Inc.,* 465 F.Supp. 1281 (S.D.N.Y.1979). "[A] reasonable apprehension alone, if not inspired by defendant's actions, does not give rise to an actual controversy." *International Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1211 (7th Cir.1980). The jurisdictional question, then, is whether the conduct of Semi-Alloys has given Indium a "well grounded fear" or "reasonable apprehension" of an impending infringement suit.

■ In its complaint, Indium alleges two bases for its fear of an infringement suit. First, Semi-Alloys had asserted these patents against competitors in three previous lawsuits.[1] Second, Semi-Alloys sent a letter to Indium on February 22, 1982, offering to license Indium under the patents.

In addition, Indium has produced (as an exhibit to its Memorandum of Law) a copy of a complaint in a recently commenced state court action wherein Semi-Alloys sued Indium for, *inter alia,* unfair competition due to Indium's employment of a former Semi-Alloys' manager.[2] In that complaint, which was verified by Hascoe, Semi-Alloys averred that "Plaintiff has repeatedly received information that defendant Indium

---

**1.** *Semi-Alloys, Inc. v. Plessey, Inc.,* CA3–75–0549–C, ND Texas, Dallas Div., filed May 5, 1975; *Semi-Alloys, Inc. v. Metalized Ceramics Corp.,* CA3–75–0698–C, ND Texas, Dallas Div., filed June 4, 1975; and *Semi-Alloys, Inc. v. Williams Gold Refining Co., Inc.,* 75–CV–300 (W.D.N.Y. filed July 21, 1975) later transferred to the ND Texas, Dallas Div. and consolidated with the *Metalized Ceramics* case, *supra,* as CA3–77–0919–C, ND Texas.

**2.** *Semi-Alloys, Inc. v. Paschall and Indium Corp. of America,* Index No. 03790/82 (N.Y. Sup.Ct., Westchester Co.). This suit was terminated by a Consent Judgment and Order, dated September 7, 1982.

has embarked upon an expansion program to develop, manufacture and market high technology packaging devices similar to Plaintiff's COMBO(R)" (Semi-Alloys' tradename for the patented device).

It is defendant Semi-Alloys' contention that these allegations do not support a reasonable apprehension of an infringement suit. It emphasizes that it has never asserted its patents against Indium or Indium's customers or threatened to do so. Semi-Alloys does acknowledge having commenced two suits on the patents against others—both in 1975 and both of which were settled out-of-court—but it points out that in the third suit cited by Indium, Semi-Alloys was a defendant, not a plaintiff. *Williams Gold Refining Co. v. Semi-Alloys, Inc.,* 434 F.Supp. 453 (W.D.N.Y.1977), *dismissed mem.,* 580 F.2d 1046 (2d Cir.1978). These prior lawsuits do not, in Semi-Alloys' view, give Indium reason to fear an infringement action against it.

Nor, in Semi-Alloys' view, did its letter to Indium carry any threatening or ominous connotation. The letter, in its entirety, read as follows:

February 22, 1982

Mr. W.N. Macartney
President
INDIUM CORPORATION OF AMERICA
Box 269
1676 Lincoln Avenue
Utica, NY 13503
Dear Mr. Macartney:

Semi-Alloys, Inc. presently has assigned to it the N. Hascoe patents on preassembled lids and solder preforms for the hermetic sealing of semiconductor packages. These are U.S. Patent Numbers 3,823,468; 3,874,549; and 3,946,190.

We wish to let you know that the patents are available for licensing on a non-exclusive basis. If INDIUM does have an interest in obtaining a license, I would be pleased to discuss the matter with you.

Yours very truly,
SEMI–ALLOYS, INC.
[signature]
Samuel W. Levine
Vice President

Finally, Semi-Alloys insists that, in its suit against Indium in state court, "it did not claim, or even hint at, patent infringement ..." *Defendant's Reply Memo at 6.*

In *Nippon Elec. Glass Co., Ltd. v. Sheldon, supra,* 489 F.Supp. at 121, Judge Carter observed:

Because the [Declaratory Judgment] Act has the salutary effect of preventing patentees from threatening alleged infringers with lawsuits without risking a test of the patent's validity, this circuit has construed the "actual controversy" requirement of the Act liberally. *Wembley, Inc. v. Superba Cravats, Inc., supra,* 315 F.2d [87] at 89 [2d Cir.1963]; *Blessings Corp. v. Altman, supra,* 373 F.Supp. [802] at 805 [S.D.N.Y.1974].

Moreover, the Court of Appeals has cautioned that, in determining whether a case or controversy exists, it is improper to "ignore the realities of business life." *Muller v. Olin Mathieson Chemical Corp.,* 404 F.2d 501, 505 (2d Cir.1968).

Nevertheless, to support jurisdiction, there still must be at least "some concrete indication that the defendant patentee claims the plaintiff's activity infringes his patent, and also that he will act affirmatively to enforce the protection which he claims." *Tubeco, Inc. v. Crippen Pipe Fabrication Corp.,* 402 F.Supp. 838 at 844–45 (1975), *quoting, Japan Gas Lighter Ass'n v. Ronson Corp.,* 257 F.Supp. 219 at 237 (D.N.J.1966). As the court in *Japan Gas Lighter, supra,* further noted:

'The mere existence of the [defendant's] patent is not a cloud on title enabling any apprehensive manufacturer to remove it by suit.' ... The plaintiff's fearful conjecture that at some future time the defendant may initiate infringement proceedings will not support the suit.

*Id.* at 237.

In this instance it appears that the conduct of Semi-Alloys was not sufficiently threatening to induce a "reasonable apprehension" of an infringement suit on the part of Indium. The patentee's record of

commencing two suits on the patents in 1975 could hardly have been a source of great intimidation when this complaint was filed in 1982. At most, that record "indicates that under certain circumstances [Semi-Alloys] will pursue patent infringement litigation to defend what it perceives as an infringement of its patents." *International Harvester Co. v. Deere & Co., supra*, 623 F.2d at 1212. It does not, itself, create a concrete controversy between these parties. *See, International Harvester, supra* (prior suit between the parties involving the same patent does not support declaratory judgment plaintiff's claim of reasonable apprehension of infringement suit with respect to new product); *see also, Premo Phar. Labs. v. Pfizer Pharm., Inc., supra*, 465 F.Supp. 1281 (declaratory judgment defendant's record of vigorous enforcement of its patents does not support plaintiff's apprehension of suit under patent not previously asserted).

Nor does Semi-Alloys' letter to Indium impart any threat, explicit or implicit, of legal action on the patents. Indeed, the letter does not even mention the planned production of the product by Indium. As in *Tubeco, Inc. v. Crippen Pipe Fabrication Corp., supra*, 402 F.Supp. at 845, the communication "was at most the offer of a patent license, not an invitation to a patent contest which would warrant declaratory relief."

Finally, the prosecution of a suit by Semi-Alloys against Indium, in which the complaint refers to the similarity of their products, is not an indication that an infringement action is forthcoming. Semi-Alloys did go to court, but it limited itself to asserting its competition rights under state law, and did not place the patent infringement question in controversy.

It is fair to assume that Indium has a strong desire to resolve the questions concerning the validity of these patents, in order that it might proceed with its expanded production of solder preforms with greater commercial security. However, the plaintiff's eagerness to expand without uncertainty does not empower this court to issue an advisory opinion as to validity of the defendant's patents. A case or controversy, to exist, must stem from the patentee's threatening or ominous conduct. It appears to the court that the conduct of Semi-Alloys is insufficient to create a "reasonable apprehension" of an infringement action on the part of Indium. Accordingly, plaintiff's claim that the patents in question are invalid, nonenforceable, and noninfringed is dismissed. Rule 12(b)(1), Federal Rules of Civil Procedure.

*The Antitrust Claim*

Indium claims that Semi-Alloys restrained and monopolized trade in violation of 15 U.S.C. §§ 1 and 2 by enforcing patents which Semi-Alloys knew or should have known were invalid and unenforceable. Proceeding under the private right of action afforded by § 4 of the Clayton Act, 15 U.S.C. § 15, Indium seeks treble damages of $36 million on the theory that it was restrained from entering the market in the patented devices by Semi-Alloys' conduct. The claim is generally based on *Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965) wherein the Supreme Court held that:

> the enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present.

*Id.* at 174, 86 S.Ct. at 349.

Semi-Alloys has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), contending that Indium has failed to allege—and is unable to allege—elements necessary to its antitrust claims. The defendant's primary argument is that Indium cannot allege either a type of injury or a cause of injury that would enable it to proceed against Semi-Alloys under § 4 of the Clayton Act. In addition, the defendant argues that the complaint omits or insufficiently states the following elements necessary to the underlying Sherman Act offenses: a combination, a relevant product and geographic market, the existence of

monopoly power; the probability of monopolization.

## A. *Plaintiff's allegations and averments of injury*

The allegations in the complaint describing plaintiff's injury and the cause of that injury are brief and vague. In paragraph 13, Indium alleges that the defendant and others "wrongly enforced one or more of the '468, '549, and '190 patents by means of the aforementioned civil actions, threats, offers to license and licenses ..."[3] In paragraph 15, Indium alleges that the defendant and others "have actively sought to enforce the '468, '549 and '190 patents against Plaintiff INDIUM ...." Paragraph 16 contains the only statement relating the defendant's conduct to the plaintiff's injury:

> 16. Defendant S–A, by all of the aforementioned acts and others actively and unlawfully sought to prevent INDIUM from entering the market for pre-assembled lids and solder preforms, and has unlawfully restrained trade by INDIUM in pre-assembled lids and solder preforms or methods of making or using same, all to the great financial loss and detriment of INDIUM, which acts S–A will not cease until enjoined by this Court.

The final two paragraphs of the antitrust count quantify the damage at $12 million, and demand three times that amount pursuant to antitrust laws.

In opposition to the motion to dismiss, the plaintiff has submitted to the court various exhibits and two affidavits of William M. MaCartney, president of Indium. The submissions amplify somewhat plaintiff's allegations concerning the nature and cause of its injury. MaCartney attests that Indium had been asked to quote prices on the device in question, but refused to do so "because of the existence of the S–A patents here in suit." *Affidavit of 9/22/82* ¶ 5. He also states in paragraph 6 that:

At various times INDIUM has considered entering the business of selling the aforementioned pre-assembled lid-frame combination covers, but in each instance INDIUM has decided not to enter that market because of the existence of the S–A patents here in suit, and in more recent years because of INDIUM's knowledge of Semi-Alloy's reputation for enforcing those patents ...

MaCartney goes on to explain that the combination covers are apparently displacing the previously used devices, and "as a result INDIUM has seen its business in the manufacturing and sales of separate 'frames' decrease from over several million units in 1978 to a projected total of about 150,000 in 1982." *Id.* at ¶ 7. According to MaCartney, Indium learned in July, 1981 of the bases for the invalidity of Semi-Alloys' patents, and it "immediately accelerated its efforts to enter the market with its own pre-assembled lid-frame combination cover product." *Id.* at ¶ 9

In a supplementary affidavit, MaCartney describes the availability of resources and facilities, in furtherance of its argument that it was ready, willing and able to produce the devices but for its fear of an infringement suit. As Indium's president states:

> ... despite INDIUM's existing facilities and proven technical ability to produce frames, knowledge of pre-assembled combination covers, and existing sales force with existing knowledge of and supplier status with, customers in the industry which purchase the combination cover product, INDIUM was prevented from making and selling the combination cover product *per se* because of the existence of S–A's patents. Stated otherwise, S–A's patents and enforcement thereof prevented INDIUM from participating in that segment of the relevant market which

---

**3.** By "aforementioned civil actions," etc., plaintiff is presumably referring to the same conduct alleged previously as a basis for declaratory judgment jurisdiction, i.e.: the defendant sued other manufacturers on the patents, the de-

fendant sent Indium a letter offering to discuss a license; the defendant sued Indium for unfair competition and mentioned in its complaint that Indium was producing an item similar to its patented device.

increasingly consumed the combination cover product.

*Affidavit of 12/7/82* ¶ 3.

### B. Jurisdiction

Initially, the court was concerned that the plaintiff lacked constitutional standing to assert its claims, which would necessitate dismissal for lack of jurisdiction. *See Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975) ("[standing] involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."). At the court's request, the parties submitted additional briefs on this question.

■ For an antitrust plaintiff to satisfy the threshold question of constitutional standing, it must be able to allege some "injury in fact" that gives it a personal stake in the outcome of the adjudication. *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* —— U.S. ——, ——, 103 S.Ct. 897, 907 n. 31, 74 L.Ed.2d 723 (hereinafter *"AGC v. CSCC"*); *See Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); Berger & Bernstein, An Analytical Framework for Antitrust Standing, 86 *Yale L.J.* 809, 813 n. 11 (1977). Moreover, the plaintiff must show "that the injury 'fairly can be traced to the challenged action' ...." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), *quoting, Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450 (1976).

■ In deciding the jurisdictional question, the Court may, in addition to viewing the allegations in the complaint, consider affidavits or other evidence that indicate whether a possible deficiency in the complaint is correctable. Wright & Miller, 5 *Federal Practice & Procedure* § 1350 at 553–54 (1969). *See Warth v. Seldin, supra* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343, *passim* (Court considered affidavits to assist it in determining constitutional standing issue).

■ As with all well-pleaded matters in the complaint, the allegation that Semi-Alloys had placed the devices on sale more than one year prior to filing its patent application is assumed to be true. The complaint and supporting affidavits further indicate that Indium can adequately allege (though not necessarily prove) that it has for some time been ready, willing and able to produce the patented device, that it did not do so because the device was patented, and that it experienced quantifiable losses in its existing business as well as quantifiable losses in its prospective business as a result of the restraint imposed by the patents. The court is satisfied that such allegations would be sufficiently concrete and particular to satisfy the threshold requirement of some "injury in fact" that is "fairly traceable" to Semi-Alloys' challenged conduct.

### C. Antitrust Standing

■ Although the plaintiff may be able to establish its constitutional standing, thus warranting the exercise of jurisdiction by this court, it has not necessarily satisfied the more stringent requirement of "antitrust standing." The difference between the two requirements was recently discussed, albeit briefly, by the Supreme Court:

> As commentators have observed, the focus of the doctrine of "antitrust standing" is somewhat different from that of standing as a constitutional doctrine. Harm to the antitrust plaintiff is sufficient to satisfy the constitutional requirement of injury in fact, but the court must make a further determination whether the plaintiff is the proper party to bring a private antitrust action [citations omitted].

*AGC v. CSCC, supra,* 103 S.Ct. at 907 n. 31.

Antitrust standing is a question of statutory construction. The right to bring a private antitrust action for damages has been conferred by Congress upon "[a]ny person who shall be injured in his business or property by reason of anything forbidden

in the antitrust laws ...." 15 U.S.C. § 15. If plaintiff's allegations place it within the statutory description, it has standing to raise the antitrust claim.

In *AGC v. CSCC, supra,* the Supreme Court analyzed in detail the scope of the private remedy created by § 4 of the Clayton Act. It began by unequivocally noting that the remedy is not as broad as a literal reading of the statutory language would suggest. Instead, it joined with lower courts in concluding "that Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation," *id.* 103 S.Ct. at 907, *quoting, Hawaii v. Standard Oil Co.,* 405 U.S. 251, 263 n. 14, 92 S.Ct. 885, 891 n. 14, 31 L.Ed.2d 184, nor did Congress "intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover three-fold damages for the injury to his business or property." *AGC v. CSCC, supra,* 103 S.Ct. at 907, *quoting, Blue Shield of Virginia, Inc. v. McCready,* 457 U.S. 465, 477, 102 S.Ct. 2540, 2547, 73 L.Ed.2d 149 (1982).

Next the Court summarized the struggle of federal courts "to articulate a precise test to determine whether a party injured by an antitrust violation may recover treble damages," and it listed, without comment, tests that have focused on the directness of the injury, whether the plaintiff is in the "target area" of the antitrust conspiracy, or whether the injury is "arguably within the zone of interest protected by the antitrust laws." *AGS v. CSCC, supra,* 103 S.Ct. at 907–08 n. 33. It declined, however, to announce a new "black-letter rule", instructing instead that the question requires an evaluation of the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them. *Id.* at 907–08.[4]

After evaluating the allegations in the *AGS v. CSCC* case, the Court held that a Union lacked standing to assert a claim that the defendant injured it by coercing third parties and some union members to deal with non-union firms. The Court's concluding paragraph is instructive here in that it indicates what factors the court found determinative of the issue:

> We conclude, therefore, that the Union's allegations of consequential harm resulting from a violation of the antitrust laws, although buttressed by an allegation of intent to harm the Union, are insufficient as a matter of law. Other relevant factors—the nature of the Union's injury, the tenuous and speculative character of the relationship between the alleged antitrust violation and the Union's alleged injury, the potential for duplicative recovery or complex apportionment of damages, and the existence of more direct victims of the alleged conspiracy—weigh heavily against judicial enforcement of the Union's antitrust claim. Accordingly, we hold that, based on the allegations in the complaint, the District Court was correct in holding that the Union is not a person injured by reason of a violation of the antitrust laws within the meaning of § 4 of the Clayton Act.

*Id.,* 103 S.Ct. at 913.

Before evaluating the antitrust claim in the case at bar, the court notes that the normal principles for determining a motion under Fed.R.Civ.P. 12(b)(6) apply. Thus, all material factual allegations in the complaint are accepted as true, and the complaint is construed in favor of the complaining party. *Scheuer v. Rhodes,* 416 U.S. 232,

---

4. Generally in this circuit, an antitrust plaintiff had been required to show that it was "within the 'target area' [of] the alleged antitrust conspiracy, i.e., a person against whom the conspiracy was aimed, such as a competitor of the persons sued for antitrust violations." *Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc.,* 454 F.2d 1292, 1295 (2d Cir.1971), *cert. denied,* 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972). The rule required that a plaintiff, "in addition to alleging the ordinary requirement of causation ... must allege a causative link to his injury which is 'direct' rather than incidental ...." *NAACP v. New York Clearing House Ass'n.,* 431 F.Supp. 405, 408 (SDNY 1977), *quoting, Billy Baxter, Inc. v. Coca Cola Co.,* 431 F.2d 183, 187 (2d Cir.1970). This case law is now apparently supplanted by *AGC v. CSCC. See* 103 S.Ct. at 908 n. 33 ("In our view, courts should analyze each situation in light of the factors set forth in the text, *infra.*").

236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Dismissal is not warranted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, supra* at 45–46, 78 S.Ct. at 101–102.

However, in contrast to the court's previous inquiry with respect to its subject matter jurisdiction, the present inquiry is limited to the content of the complaint; plaintiff's additional submissions are not cognizable.[5] 5 Wright & Miller, *supra* § 1356 at 592. Moreover, the court will not assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged." *AGC v. CSCC, supra,* 103 S.Ct. at 902.

In this instance the complaint is quite adequate in alleging a wrongdoing by the defendant, i.e., that the defendant obtained its patents knowing that the devices had been offered for sale over a year before filing and were therefore unpatentable. *Complaint* ¶ 12. However, the complaint is woefully inadequate in alleging the plaintiff's harm, and the relationship between the defendant's wrongdoing and the plaintiff's harm.

Turning first to the harm itself, the complaint affords not the slightest hint of whether the $12 million figure is attributable to profits lost in Indium's existing business, prospective profits never realized in the combination cover market, or some other basis for damages. Nor are there any allegations in the complaint that the plaintiff was ready, willing or able to produce and market the patented device.

It is probable that this deficiency can be remedied, at least in part, by permitting plaintiff to amend its complaint. However, it may be noted here that even after

amendment, it is clear that the injury sustained by plaintiffs necessarily involves a speculative measure of harm, which is a factor to consider in determining whether the plaintiff has standing to bring the antitrust action. *AGC v. CSCC, supra,* 103 S.Ct. at 911.

The more serious defect in the complaint, in the court's view, involves the absence of factual allegations that would provide the causative link between the defendant's wrongdoing and the plaintiff's harm. Such allegations are necessary to establish, at least for pleading purposes, that the plaintiff is a person who is injured "*by reason* of anything forbidden in the antitrust laws". 15 U.S.C. § 15.

Certainly the defendant's alleged fraud upon the Patent Office does not, in and of itself, confer antitrust standing upon anyone, except perhaps the attorney general. To go further, it seems that a competitor that exercised pure self-restraint, due to the mere existence of a fraudulently obtained patent, would not ordinarily have standing to bring an antitrust action for damages, under the *AGC v. CSCC* analysis. A right of action that broad would almost inevitably involve duplicative recoveries since the suit could be brought by a wide range of potential competitors including those that were not "targets" of defendant's anticompetitive acts. Moreover, it is likely that there would be other competitors—such as those who have been subjected to infringement actions—that would be more appropriate plaintiffs to raise the antitrust claim. These were significant factors in the Supreme Court's determination that the plaintiff in *AGC v. CSCC* lacked antitrust standing.

In this court's view, in order to establish antitrust standing to assert a Walker Process claim, the plaintiff must at least be able to allege facts that indicate that the defendant has enforced, or has sought to enforce, or has threatened to enforce its

---

**5.** Fed.R.Civ.P. Rule 12(b) permits the court to consider matters outside the pleading if it converts the motion to one for summary judgment. The court, however, has complete discretion to choose between rejecting the material or ac-

cepting it and converting the motion. Wright & Miller, *supra* § 1366 at 678. In this instance the court chooses to reject the material, so that the character of the motion might remain what the movant intended it to be.

fraudulently obtained patent against the plaintiff itself. This is essentially the same standard articulated in *GAF Corp. v. Eastman Kodak Co.,* 519 F.Supp. 1203, 1234 (S.D.N.Y.1981) (emphasis added):

> With respect to a § 2 claim founded upon allegations that a patent was procured in contravention of the requirements of § 112 of the Patent Code, an antitrust plaintiff must show that the patents at issue had been obtained improperly by means of an intentional fraud on the Patent Office *and that the Patent owner enforced its patents by exclusionary infringement suits or threats of suits.*

Such allegations supply the causative nexus between the defendant's wrongdoing and the plaintiff's injury. The standard also parallels the case and controversy requirement for declaratory judgment jurisdiction over patent suits, thereby obviating the contradictory possibility that a complaint alleging patent invalidity might be sufficient under the antitrust laws, but not under the Declaratory Judgment Act.

*Walker Process* itself supports this statement of the standing requirement; indeed, its very holding states that:

> The *enforcement* of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act.

382 U.S. at 174, 86 S.Ct. at 349. (emphasis added) Elsewhere in the decision, the Supreme Court stated that the trial court erred in failing to consider "the injurious consequences *to Walker* of the patent's *enforcement.*" *Id.* at 178, 86 S.Ct. at 351 (emphasis added).

This view of antitrust standing for a Walker Process suit also comports with Justice Harlan's concern in that case that such claims "might well chill the disclosure of inventions through the obtaining of a patent because of fear of the vexations or punitive consequences of treble-damage suits." *Id.* at 180, 86 S.Ct. at 352 (Harlan,

J. concurring). *See also GAF Corp. v. Eastman Kodak Co., supra,* 519 F.Supp. 1203 (SDNY 1981) (relatively high standard of proof required in Walker Process-type antitrust suits so as to not "chill the disclosure of inventions.")

Returning to the allegations in the complaint, there are only vague and conclusory statements that Semi-Alloys sought to enforce the patents against Indium. To the extent that the complaint attempts to set forth material facts constituting enforcement, it indicates the insufficiency of that claim. As stated previously in the discussion of declaratory judgment jurisdiction, the allegations that Semi-Alloys sued other competitors on the patents, offered to discuss a license with Indium, and sued Indium for unfair competition do not amount to enforcement or a threat of enforcement of its patents against Indium. Shorn of those factual underpinnings, the recitation of enforcement in the complaint is hollow and will not, by mere invocation, confer standing upon the plaintiff.[6]

To be sure, all the Federal Rules generally require is "a short and plain statement of the claim showing that the pleader is entitled to relief, Fed.R.Civ.P. 8(a)(2), and there is no special pleading requirement for antitrust claims. *Nagler v. Admiral Corp.,* 248 F.2d 319, 322–23 (2d Cir.1957). However, before this potentially complex and protracted litigation may proceed, plaintiff must set forth in its complaint, in at least general terms, some set of facts that would support antitrust.standing. *AGC v. CSCC, supra,* 103 S.Ct. at 903 n. 17 ("Certainly in a case of this magnitude, a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."). *See also, Car Freshner Corp. v. Auto Aid Mfg. Corp.,* 438 F.Supp. 82, 86 (N.D.N.Y.1977) (Munson, J.) ("It is true

---

**6.** In *Kistler Instrumente, A.G. v. PCB Piezotronics, Inc.,* 76–CV–113 (W.D.N.Y., May 6, 1983), recently submitted by the plaintiff to this court in support of its assertion of antitrust standing, the Walker Process claim was asserted by a party that was, in that same action, defending an infringement claim. Clearly, then, it satisfied the antitrust standing requirement articulated above, that the antitrust plaintiff be able to allege patent enforcement against it.

that, even under today's liberal rules of pleading, courts have consistently required that a Complaint alleging an antitrust violation maintain some degree of specificity.").

Thus, plaintiff's complaint is deficient in its statement of injury, and in its statement of the relationship between the alleged antitrust violation and its alleged injury. It therefore fails to state a claim under 15 U.S.C. § 15 which affords a private right of action for damages only to persons "injured by reason of a violation of the antitrust laws."

■ The preferred remedy for a complaint alleging an antitrust violation that fails to indicate sufficient nexus between the alleged antitrust violation and the injury suffered by the plaintiff is to grant leave to amend the complaint, or alternatively, to order a more definite statement pursuant to Fed.R.Civ.P. Rule 12(e). *Car Freshner Corp. v. Auto Aid Mfg. Corp., supra,* 438 F.Supp. at 86. Having viewed plaintiff's affidavits in the course of determining jurisdictional questions, the Court is doubtful that plaintiff will be able to allege any set of facts that would amount to enforcement, attempted enforcement, or threatened enforcement of defendant's patents vis-a-vis this plaintiff, which is, as stated above, a prerequisite to antitrust standing for a Walker Process suit. Nevertheless, as Wright & Miller state,

> The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff can state a claim.

Wright & Miller, *supra,* § 1357 at 614.

Accordingly, it is hereby ordered that

1. Plaintiff's claim for a declaratory judgment, counts II–IV of the complaint herein, is dismissed pursuant to Fed.R.Civ.P. Rule 12(b)(1).
2. Plaintiff's claim under the antitrust laws, count I of the complaint herein, is dismissed pursuant to Fed.R.Civ.P.

12(b)(6) with leave to amend, provided such amended complaint is filed within thirty days of the date hereof.

3. Plaintiff's claim under state law, count V of the complaint herein, is dismissed pursuant to Fed.R.Civ.P. Rule 12(b)(1). *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). This dismissal is without prejudice to a reassertion of the claim in the amended complaint permitted above.

IT IS SO ORDERED.