**INDIUM CORPORATION OF AMERICA, Plaintiff,**

v.

**SEMI–ALLOYS, INC., Defendant.**

**No. 82–CV–482.**

United States District Court, N.D. New York.

Aug. 2, 1984.

Parkhurst & Oliff, Alexandria, Va., Bruns & Jenney, Syracuse, N.Y., Abelove, Siegel, Hester & Stephens, Utica, N.Y., for plaintiff; Roger W. Parkhurst, Alexandria, Va., Thomas J. Wall, Syracuse, N.Y. and Michael H. Stephens, Utica, N.Y., of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Gottlieb, Rackman & Reisman, P.C., New York City, Mead, Begley & Quinlan, Schenectady, N.Y., for defendant; Jay Greenfield, William P. Farley, Michael I. Rackman, New York City and William Quinlan, Schenectady, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Plaintiff Indium Corporation of America ("Indium") commenced this action in June of 1982, seeking a declaratory judgment of the invalidity, unenforceability, and non-infringement of three patents held by defendant Semi-Alloys, Inc. ("Semi-Alloys"); treble damages for alleged antitrust violations by Semi-Alloys; and damages based on a pendent state law claim of unfair competition. Upon motion by the defendant pursuant to Rules 12(b)(1) and (6), Fed. R.Civ.P., this Court dismissed the original Complaint, but granted plaintiff leave to file an Amended Complaint. *Indium Corporation of America v. Semi-Alloys, Inc.*, 566 F.Supp. 1344 (N.D.N.Y.1983), *as amended by Order dated July 21, 1983.* Plaintiff duly filed an Amended Complaint on August 22, 1983. Presently before the Court is defendant's motion to dismiss the Amended Complaint, which is based upon essentially the same grounds as its prior motion to dismiss the original Complaint.

For reasons set forth herein, the Court concludes that the Amended Complaint sufficiently remedies the defects of the original Complaint to withstand the instant motion to dismiss.

*Declaratory Judgment Jurisdiction*

The patents challenged herein are for an "Hermetic Sealing Cover for Container for a Semiconductor Device" (U.S. Patent 3,874,549), and a method for fabricating such cover (U.S. Patent 3,946,190) and such container (U.S. Patent 3,823,468). Defendant describes the patented device, generally, as a "tack-welded frame lid." *Amended Complaint* ¶ 9. In support of its claim that such patents are invalid and unenforceable, plaintiff alleges, in substance, (a) that Norman Hascoe (the president of Semi-Alloys and the patent applicant) and Semi-Alloys failed to reveal highly relevant prior art to the Patent Office; (b) that Semi-Alloys had sold thousands of the patented units more than a year prior to the filing dates of the patent applications; (c) that the subject matter claimed was obvious; and (d) that Hascoe was not the true and sole inventor, and had misrepresented himself as such to the Patent Office. *Amended Complaint* ¶ 86.

■ For the Court to have jurisdiction over plaintiff's declaratory judgment claim, the Complaint must allege conduct on the part of Semi-Alloys that has given Indium a "well grounded fear" or "reasonable apprehension" of an impending infringement suit. *Indium v. Semi-Alloys* at 1346. Plaintiff's original Complaint contained allegations that the defendants had asserted the patents-in-suit against competitors in three previous lawsuits; that the defendant had sent a letter to the plaintiff offering to license Indium under the patents; and that the defendant had previously sued Indium for unfair competition, and had indicated in its pleading in that suit an awareness of Indium's "program to develop, manufacture and market packaging devices similar to plaintiff's COMBO(R)" (Semi-Alloy's tradename for the patented device). The alleged conduct was held "insufficient to create a 'reasonable apprehension' of an infringement action on the part of Indium," and plaintiff's declaratory judgment claims were consequently dismissed for lack of subject matter jurisdiction. *Id.* at 1346–48.

The Amended Complaint, however, places the previously alleged acts in a new light by alleging, in considerable detail, the business context in which such conduct occurred. Plaintiff alleges, for instance, that between 1975 and 1982 the defendant had threatened with infringement suit or had actually sued *every* other supplier of tack-welded frame lids, and had driven all from the market except its co-conspirator, Williams Gold Refining Company, Inc.

More specifically, plaintiff alleges that, in 1975, the relevant market for gold tin frames was supplied by a maximum of seven suppliers: Alpha Metals, Inc., Cominco American, Inc., Consolidated Refining Corp., Plessey, Inc., Williams Gold Refining Company, Inc., Semi-Alloys, Inc. and Indium Corporation of America. Only three of those firms other than Semi-Alloys supplied tack-welded frame lids to the relevant market: CRC, Plessey, and Williams Gold. Semi-Alloys allegedly threatened CRC with a patent infringement suit, and CRC gradually ceased supplying tack-welded frame lids, withdrawing from the market entirely in 1981. Semi-Alloys actually sued Plessey for infringement in 1975, which suit was resolved by a settlement, whereupon Plessey allegedly withdrew entirely from the relevant market. Also in 1975, Semi-Alloys brought an infringement suit against a customer of Williams Gold, which provoked a countersuit by Williams Gold challenging the validity of Semi-Alloys' patents. Those suits were settled in 1981 by an agreement whereby Williams Gold is licensed to supply tack-welded frame lids to the relevant market—an agreement which plaintiff maintains is an illegal effort to preserve Semi-Alloys' fraudulently procured patents for enforcement.

Plaintiff also alleges that those suppliers that had not entered the submarket in tack-welded frame lids experienced decreased sales, *i.e.*, Cominco, Alpha Metals, Indium, and in one case withdrew from the relevant market entirely, *i.e.*, Alpha Metals.

Hence, when Indium entered the submarket in February of 1982, it became not simply one supplier among a field of com-

petitors operating in that submarket; it became the only supplier of tack-welded frame lids that had not yet been sued, or threatened with suit, by Semi-Alloys for patent infringement.

Plaintiff also specifies in its Amended Complaint that the tack-welding equipment that it purchased in February of 1982 from CRC was the same equipment CRC had been using at the time it was threatened with a patent infringement suit by Semi-Alloys.

It was in this rather omnious business context that Semi-Alloys' conduct in early 1982 occurred. As described more fully in this Court's prior Decision, Semi-Alloys sent Indium a letter in February informing Indium that its patents were available for licensing; and it then sued Indium in March, alleging in its pleading that Indium "has embarked upon an expansion program to develop, manufacture and market high technology packaging devices similar to plaintiff's COMBO(R)."

The distinction between those declaratory judgment actions which present a case or controversy and those which are hypothetical is "necessarily one of degree." *Maryland Casualty Co. v. Pacific Coal Oil & Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). In holding that no case or controversy was presented by plaintiff's original Complaint, this Court focused upon the allegations therein of particular acts by the plaintiff that were directed toward the defendant, and found that none of those acts constituted a threat of infringement. However, in its Amended Complaint, plaintiff develops the business context in which such acts occurred, and has thereby added weight to its contention that Semi-Alloys' conduct gave it a "reasonable apprehension" of an infringement suit. As a recently decided Federal Circuit case instructs, "an examination of the totality of the circumstances must be made to determine whether there is a controversy arising under the patent laws." *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874 (Fed. Cir.1983). Moreover, as this Court noted in its prior Decision, in determining whether a case or controversy exists, it is improper to "ignore the realities of business life." *Indium v. Semi-Alloys* at 1347, *quoting Muller v. Olin Mathieson Chemical Corp.*, 404 F.2d 501, 505 (2d Cir.1968). After viewing the allegations in the Amended Complaint in light of these principles, the Court now concludes that the plaintiff herein has set forth sufficient grounds for contending that it had a "reasonable apprehension" of an infringement suit at the time it commenced this action, and that a case or controversy between these parties therefore exists. Defendant's motion to dismiss the declaratory judgment action for lack of subject matter jurisdiction is therefore denied.

### The Antitrust Claims

Plaintiff maintains that in Count I of its Amended Complaint it has alleged at least three distinct violations of federal antitrust laws. First, it asserts a claim of a Sherman § 1 conspiracy, 15 U.S.C. § 1, based on allegations of a conspiratorial settlement by the defendant and Williams Gold of their patent-related litigation, which settlement left intact patents that both knew were invalid. Second, plaintiff claims that the defendant violated Sherman § 2, 15 U.S.C. § 2, by attempting, and succeeding, in monopolizing the relevant market and submarket by enforcing patents that it had fraudulently procured and which were, consequently, invalid. Third, plaintiff claims that the defendant violated both Sherman § 1 and § 2 by instituting a series of suits, including its state court suit against Indium, with the intent to monopolize the relevant market.

In dismissing plaintiff's original Complaint, this Court pointed to a number of deficiencies, but emphasized its insufficiency in "alleging plaintiff's harm, and the relationship between the defendant's wrongdoing and the plaintiff's harm." *Indium v. Semi-Alloys* at 1352. Both of those elements were deemed crucial for the plaintiff to satisfy the requirement of "anti-trust standing," which limits the availability of a private right of action to

"[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws ...." Clayton Act § 4, 15 U.S.C. § 15.

Although the Court expressed in that decision its doubt that plaintiff could overcome the inadequacies in its Complaint, *id.* at 1354, it nevertheless now concludes that plaintiff's Amended Complaint states a claim upon which relief can be granted.

First, with respect to the harm sustained, plaintiff now specifies several types of injury. For instance, plaintiff alleges that "Indium's existing business of making and selling separate frames ... was radically decreased from a volume of several million units annually in 1978 to a small volume of about one hundred thousand units in 1982 ...." *Amended Complaint* ¶ 62A. It estimates losses in that regard of "at least about $100,000." *Id.* ¶ 64A. More prominently, plaintiff alleges that it lost profits of "at least about $12.8 million" that it could have earned through sales of tack-welded frame lids, had it not been restrained by Semi-Alloy's unlawful conduct. ¶¶ 62B, 64B. Finally, plaintiff alleges as damages the legal expenses it incurred in conducting a defense in the state court action brought against it by Semi-Alloys. *Id.* ¶¶ 62C, 64C.

█ Allegations of injury will support standing only if they are not unduly speculative or duplicative of injuries sustained by others. *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 103 S.Ct. 897, 911, 912, 74 L.Ed.2d 723 (1983). Although the losses alleged by plaintiff preclude calculation with exactitude, particularly the loss of profits that the plaintiff allegedly *could have earned* had it not been excluded from the market in tack-welded frame lids, such losses are not more speculative than those typically encountered by the courts. *See Zenith Radio Corp. v. Hazeltine Research,* 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *see generally* P. Areeda, D. Turner, *Antitrust Law* ¶ 344b–c (1978), and "should be proveable under the liberal principles long recog-

nized in antitrust cases." *Crimpers Promotions, Inc. v. Home Box Office, Inc.,* 724 F.2d 290 (2d Cir.1983). Nor does there appear to be a significant risk of duplicative recoveries here: Plaintiff seeks to recover the profits that *it* lost as a restrained competitor, based on estimates of its projected share of an unrestrained market. Without regard, at this juncture, to any other challenge to these bases for recovery, it is apparent that plaintiff is seeking damages that are distinct from, and do not duplicate, injuries that other potential antitrust plaintiffs might have sustained.

█) Turning next to the "conceptually more difficult question" of the relationship between the defendant's wrongdoing and the plaintiff's harm, *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 476, 102 S.Ct. 2540, 2547, 73 L.Ed.2d 149 (1982), it should be noted at the outset that, as plaintiff emphasizes, it was a direct competitor in the relevant market; hence "there are no vague links in a lengthy chain of causation ...." *Plaintiff's Brief* at 16. *Cf. Associated General* (Union lacked standing to sue for damages it sustained as a result of defendant's coercion of third persons). Indeed, as Areeda and Turner state, "[a] plaintiff has undoubted standing to recover for injuries resulting from the antitrust violations of his 'direct' competitor. Such standing is so clear that it is seldom challenged ...." *Antitrust Law* ¶ 340a at 205.

█ Despite the above-mentioned general rule, plaintiff's original Complaint was found deficient in setting forth the causal link between the wrongdoing and plaintiff's injury because of the absence of two crucial elements. First, plaintiff failed to allege in its original Complaint that it "was ready, willing or able to produce and market the patented device." *Indium v. Semi Alloys* at 1352. Where, as here, the claim asserted is that the defendant unlawfully prevented the plaintiff from engaging in a business, particularized allegations of preparedness are essential. *See Grip Pak, Inc. v. Illinois Tool Works, Inc.,* 694 F.2d 466, 475 (7th Cir.1982). *See generally,* P.

Areeda, D. Turner, Antitrust Law ¶ 335, 173–175. In its Amended Complaint, plaintiff amply corrects the previous deficiency by alleging, *inter alia,* that at least since 1976 it had the ability and incentive to expand from its existing business of manufacturing separate gold-tin frames into the related business of manufacturing tack-welded frame-lid combinations. *Amended Complaint* ¶¶ 32–35. On this motion to dismiss, such allegations must be construed liberally and their truth must be assumed.

Second, plaintiff failed, in its original Complaint, to adequately allege that the defendant had "enforced" its allegedly fraudulently-obtained patents. In that regard, the Court expressed the view that in order to state a *"Walker-Process* type-claim," *see Walker Process Equipment Inc. v. Food Machinery and Chemical Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965),

> the plaintiff must at least be able to allege facts that indicate that the defendant has enforced, or has sought to enforce, or has threatened to enforce its fraudulently obtained patents against the plaintiff itself ....

*Indium v. Semi-Alloys* at 1352–53.

■ Before considering the allegations in the Amended Complaint, the Court is constrained to acknowledge, after consideration of the argument of counsel and further review of the relevant cases and authorities, that it would be a mistake to interpret "enforcement" too narrowly, and thereby limit the remedy of a *Walker Process* type antitrust action to competitors that have actually been sued or threatened with suit by the defendant. The concept must be broad enough to afford a remedy not only to those who actually produced an infringing article and were forced to stop by infringement suit or the threat thereof, but also to those who were ready, willing, and able to produce the article and would have done so but for the exercise of exclusionary power by the defendant. *See SCM Corp. v. Xerox Corp.,* 645 F.2d 1195, 1206 (2d Cir.1981) ("Where ... the acquisition [of the patent] itself is unlawful, the subse-

quent exercise of the ordinarily lawful exclusionary power inherent in the patent would be a continuing wrong, *a continuing exclusion of potential competitors.*") (Emphasis added); *See also,* P. Areeda, D. Turner, *Antitrust Law* ¶ 335c at 174 ("[I]t is as unlawful to prevent a person from engaging in a business as it is to drive him from it ....."). Thus, "enforcement" in the context of claim that the plaintiff was injured by the enforcement of a fraudulently procured patent, does not require proof that the defendant expressly threatened plaintiff with an infringement suit. *See Zenith Radio Corp. v. Hazeltine Research, Inc., supra,* 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129. (Despite absence in record of any specific instance of infringement suit against manufacturer's existing or potential distributors or dealers, evidence of the defendant's more general acts of patent enforcement enabled trial court to infer "that the necessary causal relationship between the pool's conduct and the claimed damages existed." *Id.* at 125, 89 S.Ct. at 1577).

■ In this instance, plaintiff alleges, inter alia, that it was a direct competitor among a relatively small field of suppliers to the relevant market; that the defendant fraudulently procured the patents in question, and then commenced a course of vigorously enforcing such patents; that between 1975 and 1982 the defendant had threatened with infringement suit or had actually sued every other supplier of tack-welded frame lids, driving all from the market except its co-conspirator; that since 1976, plaintiff was ready, willing, and able to produce tack-welded frame lids but was restrained by the defendant's vigorous course of enforcement; that after learning of grounds upon which the defendant's patents might be held invalid, plaintiff actually commenced producing tack-welded frame lids, whereupon defendant immediately contacted it regarding licensing, and filed suit against it in state court. The Court has already held, *supra,* that such allegations supply the grounds for a "reasonable apprehension" of an impending infringement suit, and therefore create a case or controversy within the Court's declaratory

judgment jurisdiction. The Court now holds that such allegations are also sufficient to state that the plaintiff is a person "injured in his property by reason of anything forbidden in the antitrust laws . . . ." Clayton Act § 4, 15 U.S.C. § 15.

Without belaboring the point, it is also clear that the Amended Complaint also supplies allegations that correct the other deficiencies identified in the original Complaint, *e.g.*, the relevant market, the scope of defendant's monopoly power.

Accordingly, defendant's motion to dismiss the Complaint pursuant to Rule 12(b)(1), (6) is hereby denied.[1] In view of the length and complexity of the Amended Complaint (and also in view of the season) defendant is afforded 30 days from the date of entry to answer.

IT IS SO ORDERED.

---

1. On July 19, the Clerk's Office received from the plaintiff a motion for leave to file a Supplemental Amended Complaint and a request for expedited procedure. The Supplemental Amended Complaint would add allegations that, in May of this year, Semi-Alloys, through its Japanese agent, expressly threatened legal action under Semi-Alloy's corresponding patent against a Japanese would/be purchaser of Indium's tack-welded frame-lids.

Plaintiff's motion, which did not recite a return date, will be placed on the calendar for the Court's next regularly scheduled motion day, September 11, 1984, unless withdrawn or adjourned by mutual consent of the parties. It is assumed that any need for an "expedited procedure" is obviated by this Memorandum-Decision.