INDIUM CORPORATION OF
AMERICA, Appellant,

v.

SEMI–ALLOYS, INC., Appellee.

Appeal No. 85–2177.

United States Court of Appeals,
Federal Circuit.

Dec. 26, 1985.

880

Roger W. Parkhurst, of Parkhurst & Oliff, Alexandria, Va., for appellant; Edward P. Walker, Parkhurst & Oliff, Thomas J. Wall, Bruns & Wall, Syracuse, N.Y., and Michael H. Stephens, Abelove, Seigel, Hester & Stephens, Utica, N.Y., of counsel.

Moses Silverman, of Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for appellee; Jay Greenfield and Thomas J. Fleming, Paul, Weiss, Rifkind, Wharton & Garrison, of counsel. Also on brief were Michael I. Rackman, Gottlieb, Rackman & Reisman, New York City, and William J. Quinlan, Mead, Begley & Quinlan, Schenectady, N.Y.

Before RICH, BALDWIN and SMITH, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the February 25, 1985, final judgment of the United States District Court for the Northern District of New York, granting defendant Semi-Alloys' motion for summary judgment and dismissing plaintiff's amended complaint with prejudice, 611 F.Supp. 379. We affirm.

*Background*

Both plaintiff-appellant, Indium Corporation of America ("Indium"), and defendant-appellee, Semi-Alloys, Inc. ("Semi-Alloys"), are New York corporations engaged in the manufacture of, *inter alia*, solder preforms or gold-tin "frames," used in the ceramic packaging of individual electronic components, e.g., semi-conductor devices. These frames can be sold and used separately or with a "tack-welded frame lid" in combination (also known as "combination covers"). Until 1981, Indium sold only the separate frames, the market for which has declined to almost nothing.

Semi-Alloys is the owner of three patents covering an "Hermetic Sealing Cover for a Container for a Semi-Conductor Device," and methods for fabricating an hermetically-sealed container and sealing cover therefor. In essence, the patents disclose a basic process for the manufacture of combi-

nation covers by the tack-welding technique.

The figure above from Semi-Alloys' U.S. Patent No. 3,823,468 illustrates how a semi-conductor device is hermetically sealed inside a ceramic container. The combination cover consists of two elements, the lid 13 and the frame 14. The lid is a piece of gold-plated metal, while the frame consists of gold-tin alloy solder in the shape of a picture frame.

The combination cover is made by tack-welding the lid and frame together. To seal the semi-conductor package, the frame 14 and lid 13 are aligned with a container 43 and then heated in a special furnace so that the frame melts and solders the lid to the container, sealing the semi-conductor device 45 inside the cavity 44.

In the early 1970's, there were at least four firms selling combination covers: Semi-Alloys, Williams Gold Refining Company ("Williams"), Plessey, and Consolidated Refining Corporation ("CRC"). In 1975, Semi-Alloys sued Plessey and Williams for infringement of one or more of its patents, the first of which issued on July 16, 1974. The suit against Plessey was settled soon after it was brought, and Plessey withdrew from the combination cover market. The litigation against Williams was settled several years later, and Williams remained in

the combination cover market. CRC left the market at the end of 1981, apparently to take advantage of a tax break that would not be available to it otherwise. By that time, Semi-Alloys supplied at least 75% of the market, and Williams supplied the remainder.

Indium began making and selling combination covers in early 1982, after purchasing CRC's equipment. This suit was filed on May 19, 1982, on the eve of Indium's first shipment of commercial quantities of combination covers and after Semi-Alloys had offered Indium a non-exclusive license under its patents by letter of February 22, 1982. Indium's complaint sought $40 million in antitrust damages and a declaratory judgment that Semi-Alloys' patents were invalid on the basis of 35 U.S.C. § 102(b) (on sale more than one year prior to the application for a patent) and § 103 (obviousness). Indium's antitrust claims were based on the theory that Semi-Alloys procured its patents by fraud and that this prevented Indium from entering the market for combination covers. Indium also sought relief under a pendent claim for unfair competition under New York State law.

The decision from which Indium appeals is the district court's third major decision in this case, reported at 611 F.Supp. 379, 225 USPQ 1159 (*"Indium III"*). The district court's first two decisions involved the adequacy of Indium's original and amended complaints.

In *Indium Corporation of America v. Semi-Alloys, Inc.,* 566 F.Supp. 1344, 219 USPQ 793 (N.D.N.Y.1983) (*"Indium I"*), the district court dismissed Indium's original complaint without prejudice, holding that Indium had failed to plead facts sufficient to show antitrust standing and that the complaint failed to demonstrate the existence of an actual controversy between the parties sufficient to confer declaratory judgment jurisdiction upon the district court.

As a result of that decision, Indium filed an amended complaint that the district court held to have alleged sufficient additional facts which, if true, could establish standing and jurisdiction. *Indium Corporation of America v. Semi-Alloys, Inc.,* 591 F.Supp. 608, 224 USPQ 404 (N.D.N.Y. 1984) (*"Indium II"*).

After its first two decisions on the sufficiency of the complaints, the district court limited initial discovery to the questions of jurisdiction and standing in anticipation of summary judgment motions on these threshold issues. At the close of discovery, Semi-Alloys moved for summary judgment, contending that the facts uncovered in discovery did not support the allegations contained in Indium's amended complaint. Indium contended that there were disputed issues of material fact which made summary judgment inappropriate.

### The District Court's Decision

In granting Semi-Alloys' motion for summary judgment on the declaratory judgment claims, the district court found that Indium could not have had a reasonable apprehension of being sued on Semi-Alloys' patents, wherefore there was no justiciable controversy between the parties which would have given the district court subject matter jurisdiction over the patent claims. The district court therefore dismissed Counts II–IV of Indium's amended complaint.

The district court also held that to establish antitrust standing, Indium would have to show that it was injured by the wrongdoing of Semi-Alloys. The court found, however, that Indium had not presented any competent evidence that it was prepared to enter the tack-welded combination cover market at the time of its alleged harm, and also found that Semi-Alloys did not exclude Indium from the business because it had not attempted to enforce its patents against Indium. The district court thus dismissed Count I of Indium's amended complaint because Indium did not have standing to assert its antitrust claims.

Finally, the district court dismissed Indium's state law unfair competition claim, Count V of the amended complaint, pursu-

ant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), which held that pendent state law claims should be dismissed when all federal claims have been dismissed before trial.

## OPINION

### Antitrust Standing

Section 4 of the Clayton Act, 15 U.S.C. § 15, limits standing to bring a private antitrust damage action to those "who shall be injured in [their] business or property by reason of anything forbidden in the antitrust laws." In *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), the United States Supreme Court identified several specific criteria which lower courts should apply to ascertain whether a claim of injury is sufficient to establish antitrust standing within the meaning of section 4 of the Clayton Act. The criteria articulated by the Court included:

(1) whether there is a causal connection between an antitrust violation and harm to the plaintiff and the defendants intended to cause that harm;

(2) whether the nature of the plaintiff's alleged injury was of the type the antitrust laws were intended to forestall;

(3) the directness or indirectness of the asserted injury;

(4) whether the claim rests on some abstract or speculative measure of harm; and

(5) the strong interest in keeping the scope of complex antitrust trials within judicially manageable limits, avoiding both duplicative recoveries and the complex apportionment of damages.

459 U.S. at 537–45, 103 S.Ct. at 908–13.

Applying these criteria to Indium's allegations, the district court identified two specific elements that Indium would have to demonstrate in order to establish the necessary "causal connection" between Semi-Alloys' conduct and harm to Indium, and to demonstrate that the connection was not "abstract" or "speculative." In *Indium II*, the district court held that Indium would have to show that (1) it was ready, willing, and able to manufacture combination covers during the relevant period, and (2) Semi-Alloys' enforcement of its patents excluded Indium from doing so. *Indium II*, 591 F.Supp. at 613–14, 224 USPQ at 407–08.

Indium's antitrust claim is that it was excluded from the business of manufacturing combination covers by Semi-Alloys' enforcement of its patents from 1975 until it actually began production in early 1982. The district court evaluated Indium's preparedness to manufacture during that period by applying the well-known standards set forth in *Waldron v. British Petroleum Co.*, 231 F.Supp. 72, 81–82 (S.D. N.Y.1964). In determining that Indium's level of preparedness did not meet that standard, the district court specifically found that Indium did not have the expertise to manufacture combination covers until September 1981, when it finalized its decision to enter the market. Indium's argument that the district court erred in requiring it to demonstrate its preparedness to enter the combination cover market, rather than the broader market for "gold-tin frames," is irrelevant. If Indium was not prepared to manufacture combination covers until late 1981, no conduct on the part of Semi-Alloys could have injured it. We therefore agree with the district court's conclusion that Indium lacked antitrust standing because there was no connection between any conduct of Semi-Alloys and Indium's alleged "harm."

### Declaratory Judgment Jurisdiction

Declaratory judgment jurisdiction under 28 U.S.C. § 2201 exists when an examination of the "totality of the circumstances" indicates that an "actual controversy" exists between the parties involved. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 272, 61 S.Ct. 510, 511–12, 85 L.Ed.2d 826 (1941); *C.R. Bard v. Schwartz*, 716 F.2d 874, 880 (Fed.Cir. 1983). In the case of an action seeking a

declaratory judgment of patent invalidity or noninfringement, the actual controversy requirement is satisfied when a defendant's conduct has "created on the part of the declaratory plaintiff a reasonable apprehension that it will face an infringement suit if it commences or continues the activity in question" and when the plaintiff has "actually produced the accused device" or has "prepared to produce such a device." *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1398–99, 222 USPQ 943, 949 (Fed.Cir.1984). The test is an objective one—reasonable apprehension, like other jurisdictional prerequisites, must exist at the time suit is filed. *Id.* A purely subjective apprehension of an infringement suit is insufficient to satisfy the actual controversy requirement.

There is no dispute here that Indium has satisfied the second prong of the jurisdictional requirement; when this suit was filed in April 1982, Indium had produced and was ready to distribute commercial quantities of combination covers. The determinative issue in this case is whether Indium has demonstrated the existence of the sort of "ominous business context" which the district court held in *Indium II* would satisfy the actual controversy requirement.

The district court found, however, that the business context was not "ominous" when Indium commenced this lawsuit, noting that Semi-Alloys never sued or threatened to sue Indium on the patents, that Indium believed that Semi-Alloys' patents were invalid, and that Semi-Alloys would therefore not risk filing a patent infringement suit. Indium's primary bases for asserting the ominous nature of the business atmosphere were the fact that Semi-Alloys had sued two other parties on its patents in 1975 and the fact that the vice-president of Semi-Alloys had sent the president of Indium a letter offering Indium an opportunity to discuss licensing Semi-Alloys' patents on a non-exclusive basis. Indium argues that these factors, combined with a host of other allegedly ominous circumstances, including allegations of a "conspiratorial settlement" of Semi-Alloys' litigation with Wil-

liams, the fact that Semi-Alloys had brought suit against Indium in state court for its hiring of Semi-Alloys' chief engineer, and other alleged "threats" that occurred after this suit was filed (and which are therefore irrelevant), indicate that Indium's apprehension that Semi-Alloys would commence an infringement suit was real and reasonable under the circumstances.

■ Although the apprehension may have been real, we do not agree that it was reasonable on the present record. The declaratory judgment plaintiff carries the burden of proving "the existence of facts underlying" his allegations of the existence of an actual controversy. *Jervis B. Webb Co.*, 742 F.2d at 1399, 222 USPQ at 949. The evidence submitted by Indium does not satisfy that burden. The prior patent litigation initiated by Semi-Alloys in 1975, against two other parties unconnected with Indium, was too remote to make Indium's apprehension of further litigation in 1982 reasonable, insofar as necessary to give standing to bring a declaratory action on that basis. Moreover, Semi-Alloys' letter of February 22, 1982, reprinted in *Indium I* at 566 F.Supp. 1344, 219 USPQ at 795–96, was a mere offer of a license and not in itself, or taken together with the litigation history, a sufficient basis for declaratory jurisdiction. The fundamental requirement for a declaratory action is that there be an actual controversy. The facts before us do not establish one.

■ The district court's dismissal of Indium's declaratory judgment claims was based on Semi-Alloys' motion for summary judgment. Such a motion for summary judgment under Rule 56, Fed.R.Civ.P., seeks a judgment on the merits of a case. Dismissal for lack of subject matter jurisdiction, however, seeks a judgment in abatement, in that it does not bar future claims. Because Semi-Alloys' motion for summary judgment actually sought a judgment by the district court that it lacked subject matter jurisdiction, the matter should have been raised by a renewed motion to dismiss under Rule 12(b)(1) (lack of

jurisdiction over the subject matter). *See* 6 J. Moore, *Federal Practice*, ¶ 56.03 (2d Ed. 1985); 5 C. Wright and J. Miller, *Federal Practice and Procedure*, § 1350, at 547 (1969). In deciding such a Rule 12(b)(1) motion, the court can consider, as it did in this case, evidentiary matters outside the pleadings. *See, e.g., Gordon v. National Youth Work Alliance*, 675 F.2d 356, 362–63 (D.C.Cir.1982) (concurring opinion of Chief Judge Bazelon); *Exchange National Bank of Chicago v. Touche Ross*, 544 F.2d 1126, 1130–31 (2d Cir.1976). The district court could thus have treated Semi-Alloys' motion for summary judgment as a "suggestion" of lack of subject matter jurisdiction and conducted an inquiry into the question of declaratory judgment jurisdiction. We therefore see no error in the district court's handling of the case or in the court's conclusion that, on the evidence presented to the court, it lacked subject matter jurisdiction over Indium's declaratory judgment claims.

Finally, Indium argues that the public interest calls for a full airing of Semi-Alloys' allegedly fraudulently procured patents. On the contrary, to permit Indium to go forward with this case would require this court to ignore statutory limitations on antitrust standing and the statutory "actual controversy" limitation on declaratory judgment jurisdiction. Public policy, of course, dictates dismissal of litigation where there is neither standing nor jurisdiction.

### *Conclusion*

For the foregoing reasons, the judgment of the district court is *affirmed* in all respects.

AFFIRMED.