11 F.3d 1573
 29 U.S.P.Q.2d 1188
 CEDARS-SINAI MEDICAL CENTER, Warren S. Grundfest, M.D.,
James S. Forrester, M.D., and Frank Litvack, M.D.,
Plaintiffs-Appellants,
v.
James D. WATKINS, Secretary, United States Department of
Energy, Defendant-Appellee.
 No. 92-1410.
 United States Court of Appeals, Federal Circuit.
 Dec. 13, 1993.
 
 Coe A. Bloomberg, Lyon & Lyon, of Los Angeles, CA, argued for plaintiffs-appellants. With him on the brief, was David A. Randall.
 William C. Bergmann, Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, DC, argued, for defendant-appellee. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen. and Vito J. DePietro, Director. Also on the brief, was Thomas J. Byrnes, Asst. Director, Dept. of Justice, of counsel.
 Before ARCHER, MICHEL and CLEVENGER, Circuit Judges.
 CLEVENGER, Circuit Judge.
 
 
 1
 Cedars-Sinai Medical Center, a non-profit corporation, and Drs. Grundfest, Forrester, and Litvack, all of whom are employed at the Medical Center (collectively Cedars), appeal from the May 19, 1992 order of the United States District Court for the Central District of California[1] dismissing Cedars' cause of action without prejudice for lack of subject matter jurisdiction on ripeness grounds. After concluding that we have statutory jurisdiction over this appeal, we affirm the district court's dismissal.
 
 
 2
 * In June 1983, Dr. Grundfest conducted certain experiments in the area of laser angioplasty[2] at the Argonne National Laboratory (Argonne), a government-owned facility operated by the University of Chicago under contract with the United States Department of Energy (Energy). After the work at Argonne, Grundfest et al. on December 8, 1983 filed U.S. Patent application Serial No. 06/559,430 entitled "Method of Medical Treatment Using an Excimer Laser on Organic Tissue" with Cedars as the assignee thereof. Foreign patents encompassing the subject matter of Grundfest's original U.S. application have since been procured by Cedars in at least eleven foreign countries.
 
 
 3
 On January 9, 1984, Dr. Gruen, an employee at Argonne with whom Grundfest had performed his experiments, filed U.S. Patent application Serial No. 06/569,088 claiming the same subject matter as Grundfest's application. U.S. Patent No. 4,686,979, entitled "Excimer Laser Phototherapy for the Dissolution of Abnormal Growth," ultimately issued to Gruen et al. on August 18, 1987 from a continuation-in-part of the original application,[3] and is presently owned by the United States as assignee.
 
 
 4
 The same subject matter was also claimed by a third party, Mr. Ralph Linsker, who filed U.S. Patent application Serial No. 07/198,424 entitled "In vivo Ablation of Blood Vessel Lesions Employing Laser Energy at a Wavelength of 210 to 320 Nanometers" on May 25, 1988.
 
 
 5
 On September 10, 1991, as a result of Cedars' efforts, Interference No. 102,459 was declared between Grundfest (Senior Party),[4] Gruen, and Linsker, wherein priority of invention under 35 U.S.C. Sec. 102(g) will be initially determined by the Board of Patent Appeals and Interferences (Board).
 
 
 6
 On December 10, 1991, Energy served upon Cedars a document entitled "Determination Under 42 U.S.C. Sec. 5908" (Determination) which asserted title to any invention Grundfest may have made. The Determination stated, in part, that the Secretary of Energy
 
 
 7
 [had] determined that the activities of Grundfest ... in relation to the invention were carried out with a contribution by the Government of the use of Government facilities, equipment, materials and allocated funds and that the invention is related to the arrangement or understanding under which the participants in the research operated and the work they performed and therefore that the invention, if it was made by Grundfest ..., was made in the manner specified in 42 U.S.C. [Sec.] 5908.
 
 
 8
 The Determination thus implicitly concluded that "title to [any] invention [made by Grundfest et al.] shall vest in the United States." 42 U.S.C. Sec. 5908. The Determination also provided that any request by Cedars for reconsideration of the administrative action "shall be submitted to [Energy] within thirty (30) days" of issuance. Cedars, however, did not request reconsideration.[5] After expiration of the 30-day period, Energy issued a declaration of finality on February 4, 1992 informing the Board that the Determination was a final agency action.
 
 
 9
 Meanwhile, Cedars had filed suit in the United States District Court for the Central District of California asserting two causes of action. In its first cause of action, Cedars sought to set aside the Determination under the Administrative Procedure Act (APA), 5 U.S.C. Secs. 701-706 (1988), as invalid and without force or effect because, inter alia : The Determination violated Cedars' Fifth Amendment right to due process; it was generated in a procedurally defective manner; and the issuance thereof exceeded the Secretary of Energy's statutory authority. Cedars' second cause of action sought a declaratory judgment under 28 U.S.C. Sec. 2201 (1988) on several issues: Whether the doctrines of laches, waiver and estoppel bar the government from asserting title to Cedars' invention under section 5908; whether section 5908 applies to Cedars; whether section 5908 is superseded by chapter 18 of Title 35 of the United States Code, 35 U.S.C. Secs. 200-212 (1988) (35 U.S.C. ch. 18); and whether the Determination was unlawfully issued.
 
 
 10
 After considering Cedars' complaint and the parties' various motions, the district court granted the government's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.[6] The court concluded that the entire controversy between the parties was not ripe for adjudication, reasoning that the Board could reach a result in the pending Interference that would eliminate any need to address Cedars' arguments:
 
 
 11
 [T]he issues are not fit for judicial decision since the interference action is still pending and the Board has not yet issued an opinion....
 
 
 12
 ... It is possible that the Board could decide that the patent belongs to the Gruen group, which currently holds the patent.... [or to] Linsker.... [in which case Energy's] Determination would be of absolutely no consequence because it only says that in the event the Board awards the patent to the Grundfest group, the United States would still own the patent....
 
 
 13
 The court found insufficient to render the case ripe for adjudication Cedars' allegation that the Determination had immediately impacted Cedars' rights by placing a cloud upon the title to its foreign patents, thereby affecting Cedars' ability to successfully license its intellectual property. Cedars timely appealed the district court's dismissal to this court. The government then filed a motion to dismiss the appeal for lack of subject matter jurisdiction, arguing that the appeal belonged in the United States Court of Appeals for the Ninth Circuit. This motion is presently pending, Cedars' suggestion for an in banc hearing on this issue having been declined on October 7, 1992.
 
 II
 
 14
 In response to the government's motion to dismiss, we turn first to the issue of whether this court possesses statutory jurisdiction over the subject matter of this appeal before reviewing arguments on the constitutional ripeness issue.
 
 
 15
 Our jurisdiction is circumscribed by statute, and is specifically limited to certain catalogued fields of the law. Pertinent to this case, 28 U.S.C. Sec. 1295(a)(1) (1988) grants to this court exclusive jurisdiction over an appeal from a federal district court "if the jurisdiction of that court was based, in whole or in part, on [28 U.S.C. Sec. 1338 (1988) ]." Thus, under section 1295(a)(1), the determination of whether this court has jurisdiction to hear an appeal is necessarily driven by whether a district court's jurisdiction was based at least in part on 28 U.S.C. Sec. 1338. This presents a pure question of law. See Speedco, Inc. v. Estes, 853 F.2d 909, 911, 7 USPQ2d 1637, 1639-40 (Fed.Cir.1988); Christianson v. Colt Indus. Operating Corp., 822 F.2d 1544, 1550, 3 USPQ2d 1241, 1245-46 (Fed.Cir.1987), vacated, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811, 7 USPQ2d 1109 (1988).
 
 
 16
 28 U.S.C. Sec. 1338(a) reads, in pertinent part: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents...." (emphasis added). In determining whether section 1338(a) is satisfied, the failure of a complaint to reference section 1338 is not dispositive. Morganroth v. Quigg, 885 F.2d 843, 846, 12 USPQ2d 1125, 1127 (Fed.Cir.1989). Rather, "[t]he critical inquiry is whether in fact the complaint asserted a claim arising under the patent laws." Id., 885 F.2d at 846, 12 USPQ2d at 1127.
 
 
 17
 In Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811, 7 USPQ2d 1109 (1988), the Supreme Court interpreted the "arising under" language of section 1338(a) in the same fashion as that of 28 U.S.C. Sec. 1331 (1988), which governs the federal district courts' original jurisdiction over "federal questions." The Court thereby incorporated the principles underlying the "well pleaded complaint" rule into the root of our patent law jurisdiction, stating:
 
 
 18
 [Section] 1338 jurisdiction ... extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.
 
 
 19
 486 U.S. at 808-09, 108 S.Ct. at 2173-74, 7 USPQ2d at 1113 (citations omitted). Either determination under Christianson requires that this court identify the statute(s) pursuant to which the present causes of action are brought.
 
 
 20
 Cedars' second cause of action seeks a declaratory judgment that the Energy Determination is invalid on several grounds.[7] Though on its face, the complaint seeks to raise issues under, inter alia, Title 35, it is settled law that a plaintiff may not satisfy the well-pleaded complaint rule simply by filing a declaratory judgment complaint that on its face requires resolution of a question of patent law if a direct complaint for redress would not otherwise invoke the patent laws. As we held in Speedco, when faced with a declaratory judgment, this court employs the principles articulated in Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 16, 103 S.Ct. 2841, 2849, 77 L.Ed.2d 420 (1983) (citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)), in order to determine whether section 1338 jurisdiction exists. We thus apply the well-pleaded complaint rule, not to the declaratory judgment complaint, but to the hypothetical action that the declaratory judgment defendant would otherwise have brought directly against the declaratory judgment plaintiff. Speedco, 853 F.2d at 912, 7 USPQ2d at 1640.
 
 
 21
 After constructing a hypothetical complaint that otherwise would have been filed by the declaratory judgment defendant, this court's jurisdictional onus is then to determine both under which federal statute(s) the hypothetical cause of action would have "aris[en]," and whether those federal statute(s) "relat[e] to" patents, while staying ever loyal to the Supreme Court's guidance in Christianson, 486 U.S. at 808, 108 S.Ct. at 2173, 7 USPQ2d at 1113.
 
 
 22
 In the present case, the hypothetical cause of action is one to enforce the Determination: an injunctive action against Cedars to enforce Energy's rights as declared in the Determination, or in the government's words, "an action for the forced assignment [or issuance] of the rights to the patent application in question" to the Secretary of Energy. This hypothetical cause of action at least in part "aris[es] under" the substantive statute of 42 U.S.C. Sec. 5908, since a district court would be required to address, inter alia, whether section 5908 actually encompasses Cedars' experimentation at Argonne.[8] See also 28 U.S.C. Sec. 1361 (1988) (possible action against Commissioner under general federal mandamus provision).
 
 
 23
 The government, however, argues that section 5908 cannot "relat[e] to" patents because it is concerned solely with title, ownership, and assignment issues which are merely contract issues over which this court lacks exclusive jurisdiction. Though we agree that this court generally lacks jurisdiction over a simple contractual dispute involving construction of contract terms familiar to the patent law, see, e.g., American Tel. & Tel. Co. v. Integrated Network Corp., 972 F.2d 1321, 23 USPQ2d 1918 (Fed.Cir.1992) (presence of contractual terms "invention," "made or conceived," and "make or conceive" insufficient to permit removal of case from state to federal court); Ballard Medical Prods. v. Wright, 823 F.2d 527, 530, 3 USPQ2d 1337, 1339 (Fed.Cir.1987) (that patent issues are relevant to resolution of a contract dispute "cannot possibly convert a suit for breach of contract into one 'arising under' the patent laws"); Beghin-Say Int'l, Inc. v. Ole-Bendt Rasmussen, 733 F.2d 1568, 1570-71, 221 USPQ 1121, 1123 (Fed.Cir.1984) (dispute over agreements that may assign future patent applications does not convert conflict into one under federal patent laws), and although we agree that "when an invention was conceived may be more a question of common sense than of patent law," American Telephone, 972 F.2d at 1324, 23 USPQ2d at 1920, we cannot escape the fact that section 5908, whether or not concerned purely with ownership, is an Act of Congress and therefore presents a case clearly distinguishable from those concerning whether a contract dispute belongs in state or federal court.
 
 
 24
 Moreover, the Act of Congress in the present case clearly "relat[es] to" patents. 42 U.S.C. Sec. 5908(a)[9] is entitled "Vesting of title to invention and issuance of patents to United States; prerequisites," and may only be invoked "whenever any invention is made or conceived in the course of ... any contract of the Secretary [of Energy]." See also 42 U.S.C. Sec. 5908(m)(3), (4) (respectively defining "made" and "invention"). Further, once either of the statutory requirements in section 5908(a)(1) & (2) are satisfied, "title to such invention shall vest in the United States, and if patents on such invention are issued they shall be issued to the United States...." We must reject any argument to the effect that a statute that in essence instructs the Commissioner to issue a patent to the United States, rather than to the named inventor, and thus concerns the administrative functioning of the Commissioner and the Patent & Trademark Office (PTO), is not "relat[ed] to" patents. See Morganroth v. Quigg, 885 F.2d 843, 12 USPQ2d 1125 (Fed.Cir.1989) (jurisdiction over case involving review of Commissioner's order on petition to revive an abandoned application); Wyden v. Commissioner of Patents & Trademarks, 807 F.2d 934, 231 USPQ 918 (Fed.Cir.1986) (jurisdiction to review Commissioner's refusal to award passing grade on registration examination under 35 U.S.C. Sec. 32 (1988)); Dubost v. United States Patent & Trademark Office, 777 F.2d 1561, 227 USPQ 977 (Fed.Cir.1985) (jurisdiction over mandamus action challenging PTO's administrative determination denying filing date to application because check accompanying application was unsigned); cf. 35 U.S.C. Sec. 145 (1988) (civil action against Commissioner to obtain patent).
 
 
 25
 We conclude that 42 U.S.C. Sec. 5908 is "an Act of Congress relating to patents," and therefore that Cedars' complaint conferred statutory jurisdiction upon the district court based in part on section 1338. This court thus has statutory jurisdiction to review the district court's decision. See Wyden, 807 F.2d at 941-42, 231 USPQ at 924-25 (Markey, C.J., dissenting) (predicting that court's holding in banc that it had jurisdiction over administrative matter in PTO would require taking jurisdiction over action under 42 U.S.C. Sec. 5908); cf. Alco Standard Corp. v. Tennessee Valley Auth., 808 F.2d 1490, 1 USPQ2d 1337 (Fed.Cir.1986) (suit under 16 U.S.C. Sec. 831r against the Tennessee Valley Authority for reasonable compensation for patent infringement is based on section 1338(a) jurisdiction), cert. dismissed, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). The government's motion to dismiss the appeal is denied.
 
 III
 
 26
 When reviewing a district court's conclusion that the causes of action in a case are not ripe for adjudication, and therefore are beyond the Article III jurisdiction of the federal courts, this court applies the law of the regional circuit in which the district court sits. Molins PLC v. Quigg, 837 F.2d 1064, 1066, 5 USPQ2d 1526, 1527 (Fed.Cir.), cert. denied, 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988); cf. Minnesota Mining & Mfg. Co. v. Norton Co., 929 F.2d 670, 672 & n. 3, 18 USPQ2d 1302, 1304 & n. 3 (Fed.Cir.1991) (Federal Circuit law governs review of decision to dismiss infringement suit based solely on existence of pending interference when justiciability of controversy is not in question). The United States Court of Appeals for the Ninth Circuit reviews de novo a dismissal under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Love v. United States, 915 F.2d 1242, 1245 (9th Cir.1989). However, in the context of a ripeness determination, "[t]he district court's factual findings on jurisdictional issues must be accepted unless clearly erroneous." Winter v. California Medical Review, Inc., 900 F.2d 1322, 1325 (9th Cir.1989); see also Hamlet v. United States, 873 F.2d 1414, 1416 (Fed.Cir.1989).
 
 IV
 
 27
 The constitutional doctrine of ripeness is succinctly delineated in Abbott Labs. v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967):
 
 
 28
 [The] basic rationale [of the ripeness doctrine] is to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.
 
 
 29
 Id., 387 U.S. at 148-49, 87 S.Ct. at 1515-16.
 
 
 30
 The Supreme Court thus requires application of a two-part test to determine whether a case is ripe for judicial action: First, whether the issues are fit for judicial decision--that is, whether there is a present case or controversy between the parties, see Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972); BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 977, 28 USPQ2d 1124, 1126 (Fed.Cir.1993); and second, whether there is sufficient risk of suffering immediate hardship to warrant prompt adjudication--that is, whether withholding judicial decision would work undue hardship on the parties, MacMullan, 406 U.S. at 506, 92 S.Ct. at 1755; Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n, 461 U.S. 190, 200-01, 103 S.Ct. 1713, 1720-21, 75 L.Ed.2d 752 (1983) (quoting Abbott Labs., 387 U.S. at 149, 87 S.Ct. at 1515-16). Both prongs must be satisfied before an Article III court may apply its adjudicative powers to a case's merits. See Western Oil & Gas Ass'n v. Sonoma County, 905 F.2d 1287, 1291 (9th Cir.1990) (Ninth Circuit inquires whether "the controversy generated is essentially legal in nature or whether further factual amplification is necessary [and] ... assess[es] potential hardship to the parties if review is denied"), cert. denied sub nom. Western States Petroleum Ass'n v. Sonoma County, 498 U.S. 1067, 111 S.Ct. 784, 112 L.Ed.2d 846 (1991).
 
 
 31
 * With respect to the first prong of the Abbott Laboratories test, the government argues, inter alia, that the case is not ripe for adjudication because the issues raised are identical to those pending before the Board, and were the Board to conclude that a party other than Grundfest was, in law, the first to invent the subject matter of the count, Cedars would have no property on which to base a challenge to the Determination.[10] The government also argues that the administrative Determination was not a final agency action which is ripe for judicial action, but rather is "merely preparatory in nature," serving as a prerequisite for Energy's assertion of rights to the invention. The government supports its second argument with the fact that the Determination itself permitted Cedars to request reconsideration from Energy. The government further argues that no controversy over the Determination can be ripe for adjudication until it takes steps to enforce its rights under the Determination, notwithstanding any possible advance impact that the Determination may have on Cedars because of the reaction of third parties to the Determination. In short, the government contends that it has sole control over the time at which Cedars' complaint becomes ripe.
 
 
 32
 With respect to its domestic patent rights, Cedars contends that the complaint is justiciably alive notwithstanding the ongoing Interference because of the possibility that Cedars will prevail before the Board. Citing 13A Charles A. Wright et al., Federal Practice & Procedure Sec. 3533.1, at 220-21 (1984 & Supp.1993) and cases cited therein, Cedars argues that its suit remains justiciable "despite a strong probability that a mooting event will occur." We need not dispute that an otherwise justiciable case or controversy may remain so notwithstanding the possibility of a subsequent mooting event. That proposition, however, is irrelevant to the circumstances of this case because Cedars has yet to demonstrate the existence of such a case or controversy.
 
 
 33
 As of this moment with respect to Cedars' domestic patent rights, the effects of the Determination have yet to be felt in any concrete sense. Abbott Labs., 387 U.S. at 148-49, 87 S.Ct. at 1515-16. This is so with regard to both causes of action pleaded in Cedars' complaint. Moreover, due to the pending Interference, judicial resolution of the issues presented would not in any way alleviate the current cloud over Cedars' domestic patent rights, since the overarching question of which party to the Interference will eventually have the right to exclude others from making, using, or selling the technique of laser angioplasty would remain. Were the Board to conclude that a party other than Grundfest should prevail in the Interference, any decision by the federal courts regarding the efficacy of the Determination would have absolutely no effect with respect to Cedars' domestic patent rights. On the record before this court, we must conclude that based on Cedars' domestic patent rights alone, review of the present case is barred by both Article III and the discretionary prudential consideration of conservation of judicial resources. See 13A Wright et al., supra, Sec. 3532.1, at 115, 118 n. 9; Sec. 3532.2, at 146-47. Compare Minnesota Mining & Mfg., 929 F.2d at 674, 18 USPQ2d at 1305-06 (mere possibility of mooting event in interference, without more, is insufficient reason to dismiss infringement suit). Cedars has not argued that it has domestic property rights other than its rights to the Grundfest application that presumably would be subject to impairment by the existence of the Determination irrespective of the existence of the ongoing Interference. See 42 U.S.C. Sec. 5908(m)(4) (as used in section 5908, term "invention" encompasses any invention or discovery, "whether patented or unpatented").
 
 
 34
 Cedars next argues that the case is ripe for adjudication because the Determination has had an immediate adverse effect on its ability to license its foreign patents. In this regard, Cedars' contention relates to both of its causes of action. According to Cedars, the outcome of the Interference cannot affect its foreign patent rights because the issue before the Board is priority of invention, an issue which is irrelevant under the pertinent first-to-file foreign patent laws and which cannot by itself affect the issue of who first filed the application for patent. Cedars further argues that the case is ripe because the issues of statutory construction and interpretation regarding the scope of sections 5908 and 35 U.S.C. ch. 18 are purely legal, and therefore will not benefit from further factual development. We agree that Cedars has satisfied the "fitness" portion of the test in Abbott Laboratories.
 
 
 35
 First, our precedent clearly establishes that patent property rights, "of which the patentee cannot be deprived without due process of law.... necessarily includ[e] the right 'to license and exploit patents.' " Patlex Corp. v. Mossinghoff, 758 F.2d 594, 599, 225 USPQ 243, 246 (citation omitted), modified, 771 F.2d 480, 226 USPQ 985 (Fed.Cir.1985).
 
 
 36
 Though both Cedars' complaint and the Determination itself fail to mention explicitly that Energy is asserting right and title to Cedars' foreign patent rights,[11] this omission is not fatal to Cedars' position. Without passing on the merits of the government's position, it is uncontroverted by the government on appeal that it understands the Determination to assert title over the foreign patents: "As used in 42 U.S.C. Sec. 5908, 'title' includes both foreign and domestic patent rights." Under such circumstances, the Federal Rules of Civil Procedure are quite permissive in permitting a party to amend its complaint to conform to the evidence and to the positions taken at trial. See Fed.R.Civ.P. 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings....").
 
 
 37
 We also conclude that the government's position in this court regarding the finality of the Determination is disingenuous at best, being wholly at odds with its representations to the Board. Expiration of the 30-day period in which to request reconsideration of Energy's Determination rendered the decision final, as Energy explicitly represented to the Board during the Interference. Moreover, even assuming that the administrative Determination is not final in the traditional sense, it is nevertheless capable of adversely influencing Cedars' foreign patent rights, even in the absence of any further action from Energy on the issue. If, for example, others refuse to contract with Cedars because of their fear that the Determination abrogates Cedars' ownership of the foreign patents, the Determination will have actual effects without any government effort to enforce its terms. In this sense, the government's position wholly ignores the potential practical effects on Cedars' property rights of the mere existence of the Determination, even if only "preparatory," regardless of any future enforcement efforts by Energy. See Abbott Labs., 387 U.S. at 149, 87 S.Ct. at 1515 (requirement of finality determined "in a pragmatic way"); California, Dep't of Educ. v. Bennett, 833 F.2d 827, 833 (9th Cir.1987) (same). Furthermore, there is no suggestion that failure to request reconsideration prevents Cedars from now challenging the administrative action in court. See supra, note 5.
 
 
 38
 We thus conclude that the district court's conclusion that Cedars failed to meet the first prong of Abbott Laboratories was error, since the fact that the Interference is still pending is immaterial to Cedars' foreign patent rights and therefore extraneous to consideration of whether the case regarding Cedars' foreign patent rights is ripe.
 
 B
 
 39
 Regarding the "hardship" prong of Abbott Laboratories, the procedural posture of this case raises "the central concern [of the ripeness] doctrine [of] whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." 13A Wright et al., supra, Sec. 3532, at 112 (1984).
 
 
 40
 Paragraph 39 of Cedars' complaint stated that
 
 
 41
 [Cedars] will suffer irreparable harm for which they lack an adequate remedy at law, for reasons including the following: Difficulty in disseminating the technology to which the invention relates due to doubts on the part of physicians and surgeons, hospitals, potential manufacturers, financiers, consultants, potential licensees and others as to whether [Cedars] ha[s] the right to practice, disseminate and otherwise deal with that technology.[12]
 
 
 42
 Cedars argues that this allegation in its complaint satisfied the hardship prong of Abbott Laboratories because its allegation that the Determination clouds the title to its foreign patents, impairing its ability to license those patents, should be accepted as true and construed in a light most favorable to Cedars for purposes of reviewing a Rule 12(b)(1) dismissal, and because it submitted documentation with its complaint supporting its allegations that it is suffering immediate and substantial hardship abroad. We cannot accept either of Cedars' positions.
 
 
 43
 The burden of establishing jurisdiction in the district court lies with the party seeking to invoke the court's jurisdiction. KVOS, Inc. v. Associated Press, 299 U.S. 269, 278, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936); see Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 912 (9th Cir.1990); see also Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed.Cir.1988). If a Rule 12(b)(1) motion simply challenges the court's subject matter jurisdiction based on the sufficiency of the pleading's allegations--that is, the movant presents a "facial" attack on the pleading--then those allegations are taken as true and construed in a light most favorable to the complainant. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (case dismissed upon facial attack on complaint, without consideration of any extrinsic evidence); 2A James W. Moore et al., Moore's Federal Practice p 12.07[2.-1], at 12-51 to -52 (1993).
 
 
 44
 If the Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, however, the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction. Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558-59 (9th Cir.1987); 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure Sec. 1363, at 456-57 (1990). In such a case, the allegations in the complaint are not controlling, KVOS, 299 U.S. at 277-79, 57 S.Ct. at 200-01; Trentacosta, 813 F.2d at 1559; Thornhill Publishing Co. v. General Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir.1979); 5A Wright & Miller, supra, Sec. 1363, at 457-58, and only uncontroverted factual allegations are accepted as true for purposes of the motion. Gibbs v. Buck, 307 U.S. 66, 72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939); 5A Wright & Miller, supra, Secs. 1350, 1363, at 219-20, 457. All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court.[13] 2A Moore et al., supra, p 12.07[2.-1], at 12-52; see generally Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir.1990) (draws clear distinction between facial and factual challenges to court's subject matter jurisdiction); Mortensen v. First Fed. Savs. & Loan Ass'n, 549 F.2d 884, 891-92 (3d Cir.1977) (same). In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony. Land v. Dollar, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947); St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir.) (court did not err in considering materials outside pleadings in determining whether plaintiff's claim was ripe), cert. denied, 493 U.S. 993, 110 S.Ct. 541, 107 L.Ed.2d 539 (1989); Reynolds, 846 F.2d at 747; Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 883-84, 228 USPQ 845, 848 (Fed.Cir.1985), cert. denied, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986).
 
 
 45
 In the present case, the government's Rule 12(b)(1) motion to dismiss clearly challenged Cedars' assertion that it had suffered any legally cognizable wrong:
 
 
 46
 [A] Section 5908 determination does not have any immediate consequences nor does it cause any immediate change in the rights of interested parties.
 
 
 47
 * * * * * *
 
 
 48
 [T]he Section 5908 determination did not and could not invade any legally protected right of the plaintiffs as to the invention. The effect of that determination [was] merely to notify [Cedars] of the agency's position.... [Energy's] position is not self-executing nor does it have any immediate legal effect.
 
 
 49
 The Rule 12(b)(1) motion thus constitutes more than a mere facial challenge to Cedars' allegation of jurisdiction. It instead clearly disputes the factual basis for the allegations on which Cedars would establish jurisdiction over this case.
 
 
 50
 Cedars nevertheless argues that the government failed to present any evidence controverting its jurisdictional allegations contained within its pleadings. Cedars thereby displays its misunderstanding of its burden. The government's factual challenge to the court's jurisdiction placed the burden on Cedars to demonstrate facts sufficient to support its contention regarding the court's jurisdiction. Once challenged, allegations alone are insufficient to meet the complainant's burden. Trentacosta, 813 F.2d at 1559; Thornhill Publishing, 594 F.2d at 733. Thus, we must scrutinize the evidence submitted by Cedars as support for its otherwise naked jurisdictional allegations in order to determine whether this case is indeed ripe for adjudication.
 
 
 51
 Cedars relies, in main part, on an affidavit of Mr. Paul Yaeger, Cedars' Vice President, as support for its jurisdictional allegations. That affidavit first describes Yaeger's past success in licensing pending patent applications with third parties. It then continues:
 
 
 52
 I am currently involved in third party negotiations relating to Cedars U.S. Patent Application Serial No. 559,430 which is the subject of the ... December 10, 1991 Determination under Sec. 5908; and ... the Sec. 5908 Determination has had a pronounced negative impact on such licensing negotiations which I believe will either greatly reduce the royalty income to the Medical Center or prevent the conclusion of any license agreement.
 
 
 53
 As the government perspicaciously contends, however, Yaeger's assertions relate solely to the effect of the Determination on "current[ ] ... third party [licensing] negotiations relating to Cedars U.S. Patent Application." (emphasis added). The affidavit completely fails to discuss current licensing efforts with respect to Cedars' foreign patent rights. It asserts neither that such negotiations are ongoing or that, if ongoing, have been adversely affected by the Determination and are causing hardship to Cedars. Moreover, even if the Yaeger affidavit could be construed as referencing licensing of foreign patent rights, the conclusory statements do not provide the necessary factual basis to support jurisdiction. Facts must be set forth to demonstrate that the Determination directly and substantially interferes with Cedars' foreign licensing efforts. Conclusory statements, standing alone, are insufficient to carry Cedars' burden to prove hardship under the second prong of the Abbott Laboratories test.
 
 
 54
 The supporting affidavit of Cedars' representative, Mr. Coe Bloomberg, is likewise deficient. Though the affidavit establishes the fact that Cedars owns foreign patent rights, it fails to provide the evidence critical to its complaint's jurisdictional allegations. Thus, we find no evidence in the record to corroborate Cedars' assertions.
 
 
 55
 Furthermore, citing Winter v. California Medical Review, Inc., 900 F.2d 1322 (9th Cir.1989), the government argues that even if Cedars provided evidence to suggest that current licensing negotiations over its foreign patent rights have been adversely impacted by the Determination, such evidence could not overcome the ripeness hurdle in the Ninth Circuit, because it would evidence nothing more than "a possible financial loss." Id. at 1325. Cedars responds that the Determination's direct and immediate adverse effect on its day-to-day business affairs regarding its foreign patent rights is sufficient to satisfy the hardship prong of Abbott Laboratories: Cedars alleges that it is now impossible to attract venture capital for its operation and the public is being harmed because of the impediment to disseminating the relevant technology.
 
 
 56
 The basis of the government's argument and the Ninth Circuit's law is found in the Supreme Court's observation that "a possible financial loss is not by itself a sufficient interest to sustain a judicial challenge to governmental action." Abbott Labs., 387 U.S. at 153, 87 S.Ct. at 1517 (citing Frothingham v. Mellon, 262 U.S. 447, 487-88, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923)). Though we need not reach this issue to resolve the present appeal, we question the government's casual classification of damage to a patentee's intellectual property rights as "mere financial loss." See Patlex Corp., 758 F.2d at 599, 225 USPQ at 246.
 
 
 57
 Thus, with regard to Cedars' foreign patent rights, we conclude that any error committed by the district court in its analysis of the first prong of Abbott Laboratories is harmless considering the fact that Cedars failed to demonstrate hardship sufficient to satisfy the second prong of the ripeness analysis.[14]
 
 V
 
 58
 Because of the constitutional limitations on jurisdiction of the federal courts, the district court's dismissal of the action as unripe is
 
 
 59
 AFFIRMED.
 
 
 
 [1]
 Cedars-Sinai Medical Ctr. v. Watkins, No. CV-92-0154-JGD, 1992 WL 551485 (C.D.Cal. May 19, 1992) (order dismissing action without prejudice)
 
 
 [2]
 This technique utilizes lasers in the surgical reconstruction of blood vessels
 
 
 [3]
 Application Serial No. 06/702,569, filed by Gruen et al. on February 19, 1985, spawned the patent as a continuation-in-part of application Serial No. 06/569,088, which had been abandoned
 
 
 [4]
 Grundfest et al.'s application Serial No. 07/205,611, which was involved in the Interference, was accorded the benefit of the original 06/559,430 application
 
 
 [5]
 On appeal, neither party addresses the potential effect of Cedars' failure to exhaust its available administrative remedies on the federal courts' authority to entertain this appeal, nor did the district court address this issue. We also need not address this issue, however, in light of our conclusion that this case fails to satisfy the strict requirements of Article III, Sec. 2 of the U.S. Constitution
 
 
 [6]
 The government had also filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. The district court correctly refused to entertain this motion, however, concluding that it was untimely made after the government had already filed a responsive pleading (answer) to Cedars' complaint. See Fed.R.Civ.P. 12(b)
 
 
 [7]
 Cedars' first cause of action directly challenges the validity of the Determination under the APA. Cedars argues that for such an APA claim, the court must examine the underlying statute which the court has been asked to construe to determine whether jurisdiction exists. As support for its position, Cedars cites Morganroth, 885 F.2d at 846, 12 USPQ2d at 1127, and Animal Legal Defense Fund v. Quigg, 900 F.2d 195, 196, 14 USPQ2d 1485, 1486 (9th Cir.1990) (Ninth Circuit concluded that section 1338 jurisdiction existed based on claim that Commissioner of Patents lacked authority under Title 35 to rule that animals are patentable subject matter, even though wholly independent claim challenging only the procedural regularity of the Commissioner's rule was brought), transferring case to 932 F.2d 920, 18 USPQ2d 1677 (Fed.Cir.1991) (affirming on merits without comment on jurisdictional issue). Cedars concludes that the statutes underlying its APA claim include 35 U.S.C. ch. 18 and 42 U.S.C. Sec. 5908 and therefore its APA claim arises under laws relating to patents regardless of whether all of Cedars' APA claims implicate a patent statute
 We first question whether the Christianson Court's statement that "a claim supported by alternative theories in the complaint may not form the basis for [section] 1338(a) jurisdiction unless patent law is essential to each of those theories," 486 U.S. at 810, 108 S.Ct. at 2174, 7 USPQ2d at 1114 (citations omitted) (emphasis added), undermines Cedars' reliance on Animal Legal Defense Fund because Cedars' APA claims, inter alia, also challenge the Determination on a purely procedural basis. We additionally question whether Cedars' alleged authority is properly viewed in light of the principles articulated in Wang Labs., Inc. v. Applied Computer Sciences, Inc., 958 F.2d 355, 358, 22 USPQ2d 1055, 1057-58 (Fed.Cir.1992) (under Christianson, when another circuit has determined that case falls within Federal Circuit's exclusive jurisdiction, this court's "jurisdictional inquiry is at an end" if we "can find the transfer decision plausible"), and Xeta, Inc. v. Atex, Inc., 852 F.2d 1280, 1281, 7 USPQ2d 1471, 1472 (Fed.Cir.1988) (under Christianson, when one appellate court transfers case, its "jurisdictional decision ... is the law of the case"). We need not fully address this argument, however, since we conclude that we clearly have statutory jurisdiction over this case under Cedars' declaratory judgment action.
 
 
 [8]
 Cedars' argument that 35 U.S.C. ch. 18 is a necessary element to its declaratory judgment claim evidences a failure to concentrate on the hypothetical action, because chapter 18 of Title 35 would be invoked only if Cedars, in defending the hypothetical enforcement action, challenged the validity and applicability of 42 U.S.C. Sec. 5908, and the scope thereof as preempted by 35 U.S.C. ch. 18. An alternate legal defense raising a question of patent law, however, is insufficient to confer jurisdiction on this court, since Cedars' right to relief would not necessarily depend on resolution of the question concerning 35 U.S.C. ch. 18. See Christianson, 822 F.2d 1544, 1550, 3 USPQ2d 1241, 1249 (Fed.Cir.1987), vacated, 486 U.S. 800, 108 S.Ct. at 2166, 100 L.Ed.2d 811, 7 USPQ2d 1109 (1988); Christianson, 486 U.S. at 808, 810, 108 S.Ct. at 2173, 2174, 7 USPQ2d at 1113, 1114
 
 
 [9]
 Section 5908 reads, in part:
 Chapter 74--Nonnuclear Energy Research and Development
 Sec. 5908. Patents & inventions
 (a) Vesting of title to invention and issuance of patents to United States; prerequisites
 Whenever any invention is made or conceived in the course of or under any contract of the Secretary [of Energy], ... and the Secretary [of Energy] determines that--
 (1) the person who made the invention was employed ... to perform research ...; or
 (2) the person who made the invention was not employed ... to perform research ..., but the invention is nevertheless related to ... the work ... he was employed ... to perform ...[,]
 title to such invention shall vest in the United States, and if patents on such invention are issued they shall be issued to the United States, unless in particular circumstances the Secretary [of Energy] waives all or any part of the rights of the United States to such invention in conformity with the provisions of this section.
 
 
 [10]
 Relevant to this argument, we note that both the Board and the Commissioner have adopted the position that the PTO lacks the authority during an interference to decide the ownership question presented by 42 U.S.C. Sec. 5908, because the Board is authorized by 35 U.S.C. Sec. 7 (1988) to decide only patentability and priority issues. See Gruen v. Linsker, Interf. No. 102,459, slip op. at 7-8 (Bd.Pat.Apps.Interfs. Feb. 2, 1993) (Paper No. 79); Gruen v. Linsker, Interf. No. 102,459, slip op. at 6-8 (Comm'r Op. May 24, 1993); see also Gruen v. Linsker, Interf. No. 102,459, slip op. at 39-41 (PTO Aug. 20, 1992) (Examiner-in-Chief's decision on preliminary motions); 35 U.S.C. Sec. 135(a) (1988) (Interferences)
 
 
 [11]
 In its complaint, Cedars only alleges (i) the taking of its property by the United States' wrongful assertion of title to its invention, and (ii) its substantial investment abroad by pursuing patent rights in other countries
 
 
 [12]
 These allegations were specifically denied in the government's answer to Cedars' complaint
 
 
 [13]
 Compare with a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), in which allegations contained within the complaint are always taken as true and construed in a light most favorable to the non-moving party. See, e.g., Hughes v. Rowe, 449 U.S. 5, 9-10, 101 S.Ct. 173, 175-77, 66 L.Ed.2d 163 (1980); Abramson v. Brownstein, 897 F.2d 389, 391 (9th Cir.1990)
 
 
 [14]
 This case is distinguishable from Abbott Laboratories, in which uncontested allegations, 387 U.S. at 152, 87 S.Ct. at 1517, established that the new drug-labelling regulations in question had an immediate impact on the complainants: They would have either had to make an immediate, substantial monetary investment to comply with the new requirements, or risked serious civil and criminal penalties for failing to do so. In the present case, however, on the record before this court, Cedars has not demonstrated any immediate harm with respect to its foreign patent rights