**IMAX CORPORATION,**
**et al., Plaintiffs,**

v.

**IN–THREE, INC. Defendant.**

**No. CV 05–1795 FMC (MCX).**

United States District Court,
C.D. California.

July 21, 2005.

A. Stephens Clay, Geoffrey K. Gavin, Mitchell G. Stockwell, R. Charles Henn,

Jr., Susan A. Cahoon, Kilpatrick Stockton, Atlanta, GA, Chad S. Hummel, Manatt Phelps & Phillips, Los Angeles, CA, James J. Hefferan, Jr., Tonya Deem, Kilpatrick Stockton LLP, Winston–Salem, NC, Noel Scott Cohen, Manatt Phelps & Phillips, Los Angeles, CA, for Plaintiffs.

Heidi L. Keefe, Mark R. Weinstein, Samuel C. O'Rourke, William Sloan Coats, White and Case, Palo Alto, CA, for Defendants.

Craig W. Clark, White and Case, Palo Alto, CA, for Claimant.

## ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

COOPER, District Judge.

This matter is before the Court on the Motion to Dismiss for Lack of Subject Matter Jurisdiction (docket no. 45), filed June 7, 2005. The Court, having read and considered the moving, opposition and reply documents submitted in connection with this motion, hereby **DENIES** the motion for the reasons and in the manner set forth below. The Court deems this matter appropriate for decision without oral argument. *See* Fed.R.Civ.P. 78; Local Rule 7–15. Accordingly, the hearing set for July 25, 2005 is removed from the Court's calendar.

### I. Background

This patent infringement action relates to a method for converting two-dimensional films into three-dimensional media. On March 11, 2005, Plaintiffs IMAX Corporation ("IMAX") and Three–Dimensional Media Group, Ltd. ("3DMG") brought suit against Defendant In–Three, Inc. ("In–Three") for allegedly infringing U.S. Patent No. 4,925,294 (" '294 Patent"). In this motion, In–Three contends that Plaintiffs lack standing to sue on the '294 Patent and that the owner of the patent, an indispensable party, has not been joined.

On January 28, 2005, the inventor of the '294 Patent, David Geshwind, assigned to 3DMG, of which he is president, all of his "right title and interest," including "all right he may have to sue and recover for damages and other remedies in respect of any infringement of the Patents Rights which may have occurred before the date of this assignment." *See* Weinstein Decl. at Ex. E. His co-inventor, Anthony Handal, also conveyed his "right, title and interest" in the '294 Patent to 3DMG, including any right to sue to recover damages. *Id.* The copy of the January 28, 2005 assignment from Geshwind ("Geshwind Assignment") to 3DMG that has been produced to In–Three is heavily redacted. All language has been redacted except the following: (1) a recitation of consideration; (2) a warranty that Geshwind is the owner of the patent; (3) a warranty that the '294 Patent is valid and enforceable; (4) the language quoted above; and (5) a warranty that Geshwind will not interfere with the rights granted under the Patent.

On February 3, 2005, 3DMG granted to IMAX "the worldwide, exclusive right and license under the claims of the Licensed Patents [including the '294 Patent] and Licensed Know How to make, have made use, lease, offer to sell, sell, import, and practice the Licensed Technology in the Field of Use. 3DMG further [granted] to IMAX the exclusive right and license to sublicense their rights to the License Patents [including the '294 Patent] and the Licensed Know How in the Field of Use." Weistein Decl. at Ex. B.

On March 9, 2005, Geshwind and Handal signed a "Confirmatory Assignment of Patent," in which they confirmed the "transfer, conveyance, and assignment" of the '294 Patent to 3DMG. The document reiterated that Geshwind and Handal assigned the '294 Patent and the right to sue to 3DMG. The confirmatory assignment

was signed *nunc pro tunc,* effective January 28, 2005, the date of the original assignment. Geshwind explained the purpose of the confirmatory assignment: "As of January 28, 2005, I believed that I no longer had any right, title, or interest in and to the '294 Patent, all such rights then belonging to 3DMG, but in the Confirmatory Assignment I included operative language assigning any remaining title in the '294 Patent, that I might be deemed to have still had, to 3DMG." Geshwind Decl. at ¶ 6.

In–Three requested from Plaintiffs on numerous occasions an un-redacted copy of the original Geshwind Assignment, but Plaintiffs refused to produce such a copy. Plaintiffs represented to In–Three that the redacted portions pertained to the personal finances of Geshwind, which he wished to keep confidential.[1] Weinstein Decl. at Ex. J. Although In–Three argued that such information was not privileged, it did not bring a motion to compel the production of the unredacted copy. Instead, In–Three brought the instant motion pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(7), arguing that the original assignment is an essential link in the chain of title giving Plaintiffs the right to sue. Without an unredacted copy, In–Three argues, Plaintiffs are unable to establish that they have standing.

1. The Court does not consider the declarations of Geshwind and Chad S. Hummel for the proposition that the redacted portions of the assignment pertain to Geshwind's personal finances. Fed.R.Evid. 1002 requires that "[t]o prove the content of a writing . . . the original writing . . . is required."

2. Contrary to IMAX's assertion, the Court need not convert this motion into one for summary judgment to consider the writing or other evidence extrinsic to the complaint. When a motion brought under Fed.R.Civ.P. 12(b)(1) simply challenges the plaintiff's standing based on the sufficiency of the pleadings, the plaintiff may meet its burden by resting on the allegations in its complaint.

## II. Discussion

 "A party may bring an action for patent infringement only if it is the 'patentee,' *i.e.,* if it owns the patent, either by issuance or assignment." *Speedplay, Inc. v. Bebop, Inc.,* 211 F.3d 1245 (Fed.Cir. 2000); 35 U.S.C. §§ 100, 261, 281. To show that it is the patentee, a plaintiff to whom the patent was not originally issued must produce a "written instrument documenting the transfer of proprietary rights in the patents." *Speedplay,* 211 F.3d at 1250. Courts look to the substance of that writing to determine whether it has the effect of assigning the patent rights and accordingly satisfying the statutory requirement that the "patentee" must sue. *Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.,* 52 F.3d 1026, 1030 (Fed. Cir.1995).[2] The transfer of substantially all the patent rights may constitute an assignment. *Id.* (citing *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,* 944 F.2d 870, 875 (Fed.Cir.1991)). The plaintiff has the burden of establishing its standing to sue, and therefore, of establishing that an assignment has been made. *Ortho,* 52 F.3d at 1032–33.

 While an assignee may bring suit, "[a] bare licensee, who has no right to exclude others from making, using, or selling the licensed products, has no legally

The court takes the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Cedars–Sinai Medical Center v. Watkins,* 11 F.3d 1573, 1583 (Fed.Cir.1993). However, if the Rule 12(b)(1) motion controverts the pleader's allegations of jurisdiction, the allegations in the complaint are not controlling. *Id.* The Court may review extrinsic evidence. *Id.* at 1584. Under such a scenario, the plaintiff must produce evidence "sufficient to support its contention regarding the Court's jurisdiction." *Id.* Here, In–Three challenges the factual basis for the Court's jurisdiction, not the mere sufficiency of IMAX's pleadings. Accordingly, the Court may consider extrinsic evidence.

recognized interest that entitles it to bring or join an infringement action." *Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128 (Fed.Cir.1995). However, an *exclusive* licensee "may obtain sufficient rights in the patent to be entitled to seek relief from infringement." *Id.* To do so, "it ordinarily must join the patent owner." *Id.* This is because "[t]he presence of the owner of the patent as a party is indispensable not only to give jurisdiction under the patent laws, . . . but also, in most cases, to enable the alleged infringer to respond in one action to all claims of infringement for his act, and thus either to defeat all claims in one action, or by satisfying one adverse decree to bar all subsequent actions." *Id.* (quoting *Independent Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468, 46 S.Ct. 166, 70 L.Ed. 357 (1926)).

Accordingly, if someone other than the patentee attempts to bring suit, it has two effects. First, the court does not have subject matter jurisdiction over the claim. *See Ortho,* 52 F.3d at 1033 (discussing statutory standing in terms of subject matter jurisdiction). Second, an indispensable party-the actual patentee-is absent from the litigation. *See Abbott Laboratories,* 47 F.3d at 1131.

■ Plaintiffs have produced sufficient evidence to demonstrate that they have standing. As to 3DMG, the Geshwind Assignment, although heavily redacted, grants substantially all the patent rights to 3DMG. Specifically, it grants *"all* right, title and interest" to 3DMG including *"all* rights . . . to sue." Such language has the "effect of conveying full legal title in the patents" to 3DMG. *State Contracting & Eng. v. Condotte America,* 346 F.3d 1057, 1062 (Fed.Cir.2003). The January 28, 2005 Handal assignment establishes 3DMG as the sole owner of the '294 Pat-

ent. It uses language identical to the Geshwind Assignment. The March 9, 2005 confirmatory assignment confirms the January 28, 2005 assignments and reiterates the intent of the parties to transfer all rights.

In–Three, however, argues that because the Geshwind Assignment is heavily redacted, it cannot be determined whether a full grant of rights was made. In–Three speculates, despite Plaintiffs' express representations to the contrary, that certain rights may have been reserved or the grant may have come with conditions. Given this lack of certainty, In–Three argues that Plaintiffs have failed to show an assignment was made. In–Three also argues that because the confirmatory assignment does not purport to supersede the Geshwind Assignment, if the Geshwind Assignment is infirm, the confirmatory assignment is likewise insufficient to establish standing. However, the Court considers it highly unlikely that such conditions or reservations exist. Conditions or reservations (In–Three does not suggest what they might be) would be plainly inconsistent with the portions of the Geshwind Assignment granting *"all"* Geshwind's right, title and interest. It is not reasonable to assume that a document is internally inconsistent.

Because there is no reason to believe conditions or reservations have been redacted, In–Three's argument for all intents and purposes asks the Court to invoke a presumption against a valid assignment.[3] As In–Three puts it, Plaintiffs must "prove that the blacked-out portions in the [Geshwind Assignment] do not affect the issue of standing." In other words, In–Three contends that not only must Plaintiffs prove the existence of an affirmative assignment, they must *disprove* the existence of conditions or reservations. Plaintiffs' burden in establishing standing is not so high.[4] It is

---

3. It also asks the Court to impute to Plaintiffs a deliberate fraud on the Court.

4. Accordingly, it is not necessary for the Court to perform an *in camera* review of the entire Geshwind Assignment.

not necessary that Plaintiffs demonstrate to an absolute certainty that an assignment was made. They only need produce a written instrument documenting the transfer of substantially all the patent rights. This is precisely what the Geshwind Assignment and subsequent March 9, 2005 confirmatory assignment do. *See also Agilent Technologies, Inc. v. Micromuse, Inc.*, No. 04 Civ. 3090(RWS), 2004 WL 2346152 (S.D.N.Y. Oct.19, 2004) (denying Rule 12(b)(7) motion based on absence of alleged co-owner of patent despite redactions in agreement).[5]

Because Geshwind and Handal made valid assignments[6] to 3DMG, 3DMG's grant of an exclusive license to IMAX is likewise valid. In–Three challenges the exclusive license only on the basis that the January 28, 2005 assignment was invalid. Therefore, both 3DMG and IMAX have standing.[7]

### III. Conclusion

In–Three's Motion to Dismiss for Lack of Subject Matter Jurisdiction is DENIED. In–Three's request for attorney's fees is DENIED.

---

5. In–Three argues that it is entitled to the admission of the full January 28, 2005 assignment based on Fed.R.Evid. 106. Rule 106 provides, "When a writing or recorded instrument or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." The policy behind Rule 106 is not applicable here. Rule 106 is intended to protect against portions of documents being introduced out of context. Fed.R.Evid. 106 Advisory Committee Notes. Here, there is no reason to conclude that the assignment language in the January 28, 2005 assignment has

been taken out of context. In–Three is merely speculating.

6. In–Three does not challenge the January 28, 2005 Handal assignment.

7. Because the Court concludes that the January 28, 2005 assignments issued by Geshwind and Handal and the subsequently executed exclusive license are sufficient to confer standing on the Plaintiffs, the Court need not consider whether the Handal assignment would be sufficient by itself or whether Geshwind granted 3DMG an implied exclusive license.